Roger J. SCHAFRATH, Appellant,

v.

Edward J. DERWINSKI, Secretary
of Veterans Affairs, Appellee.

No. 89–114.

United States Court of Veterans Appeals.

Submitted April 1, 1991.

Decided Nov. 26, 1991.

As Amended Dec. 11, 1991.

Roger J. Schafrath, pro se.

Raoul L. Carroll, then Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and Stephen A. Bergquist, were on the pleadings, for appellee.

Before FARLEY, MANKIN and STEINBERG, Associate Judges.

STEINBERG, Associate Judge:

The veteran, Roger J. Schafrath, appeals the reduction of his rating for a bone spur of the right elbow from ten percent to noncompensable. The Board of Veterans' Appeals (BVA or Board) upheld the rating reduction based upon a physician's report indicating that there was no limitation of motion in the right elbow. The Board erroneously failed to apply the provisions of 38

C.F.R. § 4.40 to determine whether the appellant's compensable rating should be continued because of "functional loss" due to pain, and the provisions of other regulations requiring that the entire recorded history of the disability be considered. Hence, the BVA decision was void *ab initio* and it is reversed with instructions that the Board order reinstatement of the 10–percent rating. The Board also breached its statutory duty to assist the appellant in developing facts pertinent to the claim and to provide an adequate statement of reasons or bases for aspects of its decision.

## I. BACKGROUND

The following facts are drawn from secondary sources in the record since no service records are included in the record on appeal. The veteran served in the United States Navy from December 1974 to July 1977. At some point during service, he injured his right wrist and elbow while playing football at a Naval station in Alaska. He was medically discharged with a 20–percent service-connected disability, consisting of disability ratings of 10 percent for the right wrist and 10 percent for the right elbow. R. at 3. An X-ray taken three months after the injury revealed a bone spur on the elbow at the tip of the right olecranon (point of the elbow). R. at 3. The veteran was "advised against excision" of the spur on the grounds that the resulting scar tissue would be "worse than the spur." R. at 3. Consequently, the veteran chose to receive no treatment for the spur. Br. of Appellant at 1.

In 1984, the veteran apparently had surgery on his right wrist to correct the carpal tunnel syndrome which had deprived him of feeling in his right hand and fingers. R. at 3. In 1985, a fusion was apparently performed in which a metal plate and screws were inserted in his wrist, and bone from his hip was grafted into his wrist. The veteran had no motion in his right wrist. R. at 3. On May 1, 1986, a Regional Office (RO) of the Veterans' Administration (now the Department of Veterans Affairs) (VA) increased the rating for his service-connected disability of the right wrist to 40 per-

cent, leaving his elbow at 10 percent. R. at 6. In September 1986, the plate and screws were surgically removed from his wrist when they came loose, and the veteran has reported an increase in pain in his right wrist since that time. Supp. Br. of Appellant at 11.

In September 1988, a VA physician, Dr. Zorn, examined the veteran and reported that the right elbow exhibited "a full range of motion and flexion and extension of the elbow as well as pronation and supination." R. at 3. The physician also noted that the olecranon tip was "sensitive to pressure", and reported that the veteran "states that the wrist is not painful now" and "is working in construction as a carpenter." *Ibid.* Subsequent to this examination, the RO reduced the veteran's disability rating for his right elbow from 10 percent to noncompensable, effective January 1, 1989. The rating board stated that the 10–percent disability evaluation was no longer supported because the right elbow "reveals a full range of motion and flexion and extension" and "fails to indicate any abnormality other than [the] spur formation". R. at 5.

On appeal to the BVA, the veteran claimed that his elbow was in constant pain, which prevented him from performing his work as a carpenter. R. at 7, 12. In a November 15, 1988, Statement in Support of Claim, the veteran stated: "My elbow has not gotten better but has worsen [sic] as I can not lean on it or stand to have anything hit it. I am in constant pain from my elbow & wrist right arm as well as my left shoulder." R. at 7. The VA's December 29, 1988, Statement of the Case reiterated that his elbow was capable of a full range of motion and that the rating schedule (38 C.F.R. § 4.71a, DC 5206) requires a rating of noncompensable status when flexion of the forearm is greater than 100 degrees. R. at 10.

In his January 10, 1989, Notice of Disagreement, the veteran stated: "I am now having pain from my elbow-right-down through my thumb. I was at the VAOPC/ORL. 1–9–89 about this because I could not do the work I am assigned to do." R. at 12. The veteran also stated that, upon examining his arm in January 1989, an unnamed VA physician "believe[d] that something [was] wrong [and] want[ed] me to return". R. at 12. The veteran specifically requested the Board to obtain the records of that examination from the VA Outpatient Clinic (OPC) in Orlando, Florida. R. at 12. The veteran's statement to the BVA also indicated that he had seen Dr. Zorn at least two more times. The veteran's request for the Orlando records was presented to the Board on two other occasions by his representative. R. at 13, 15.

On July 7, 1989, the Board held that the veteran was not entitled to a compensable rating for his elbow condition because his forearm flexion exceeded the compensable limit under the rating schedule. In its "Discussion and Evaluation", the Board stated:

> The veteran's right elbow disability is evaluated on the basis of limitation of motion. In the instant case, the recent [VA] examination demonstrated that the veteran has no limitation of motion in the right elbow. In the absence of current evidence of such limitation, we must conclude that the veteran's right elbow disability has improved and that it does not meet the criteria for a compensable evaluation. In reaching this decision we have considered the provisions of 38 C.F.R. 4.7 and the doctrine of reasonable doubt, but can find no basis on which to allow this case.

*Roger J. Schafrath,* BVA 89–07830 at 3 (July 7, 1989).

## II. ANALYSIS

The BVA decision contains four errors: (1) failure to apply applicable regulations (part A, below); (2) failure to provide reasons or bases for aspects of its decision (part A, below); (3) failure to obtain certain requested VA medical records (part B, below); and (4) failure, on its own, to obtain prior treatment records and to order a contemporaneous medical examination (part C, below).

### A.

The veteran repeatedly asserted to the BVA that the pain in his arm due to the

service-connected injury to his elbow prevented him from working as a carpenter. In his submissions to the BVA he stated that he was "in constant pain" from his right elbow and wrist, and due to the pain he "could not do the work [he was] assigned to do." R. at 7, 12. Under 38 C.F.R. § 4.40, functional disability due to pain may be the basis of a compensable rating. That section provides:

> Disability of the musculoskeletal system is primarily the inability, due to damage or infection in parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination and endurance. It is essential that the examination on which ratings are based adequately portray the anatomical damage, and the functional loss, with respect to all these elements. The functional loss may be due to absence of part, or all, of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective innervation, or other pathology, **or it may be due to pain, supported by adequate pathology and evidenced by the visible behavior of the claimant undertaking the motion.** Weakness is as important as limitation of motion, **and a part which becomes painful on use must be regarded as seriously disabled.**

38 C.F.R. § 4.40 (1991) (emphasis added).

Section 4.40 thus recognizes that "functional loss" may be caused by pain "on use" or a "limitation of flexion" (as specified in the rating schedule under 38 C.F.R. § 4.71a, DC 5206 (1991)) and that functional loss caused by either factor should be compensated at the same rate. Hence, under the regulations, the functional loss due to pain is to be rated at the same level as the functional loss where flexion is impeded. *Cf. Lichtenfels v. Derwinski,* 1 Vet. App. 484, 487–88 (1991).

Elsewhere, the regulations specifically direct that painful motion must be considered as a part of disability when rating the joints for purposes of disability benefits. 38 C.F.R. § 4.45 (1991) states:

> As regards the joints the factors of disability reside in reductions of their normal excursion of movements in different [planes]. Inquiry will be directed to these considerations: .... Less movement than normal.... More movement than normal.... Weakened movement.... Excess fatigability.... **Pain on movement,** swelling, deformity or atrophy of disuse.

(Emphasis added.) Sections 4.40 and 4.45 together thus make clear that pain must be considered capable of producing compensable disability of the joints.

■ Where, as here, the claimant asserts to the BVA facts which would support a rating of compensable functional disability due to pain, section 4.40 must be applied to determine if a compensable rating is warranted. *See Hatlestad v. Derwinski,* 1 Vet.App. 164, 167–68 (1991); *Lichtenfels* at 487–88. A compensable rating is warranted if the claim for functional loss due to pain is "supported by adequate pathology and evidenced by the visible behavior of the claimant undertaking the motion." 38 C.F.R. § 4.40 (1991); *Hatlestad,* at 167–68.

"The BVA is not free to ignore regulations which the VA has adopted.... Once a veteran raises a well grounded claim to which a regulation could reasonably apply, the BVA must apply the regulation or give the reasons [or] bases explaining why it is not applicable." *Payne v. Derwinski,* 1 Vet.App. 85, 87 (1990); *see also Peyton v. Derwinski,* 1 Vet.App. 282, 285–87 (1991); *Gilbert v. Derwinski,* 1 Vet.App. 49, 56–57 (1990). This requirement derives directly from the BVA's jurisdictional statute, which provides in relevant part:

> (a) ... Decisions of the [BVA] shall be based on the entire record in the proceeding and upon consideration of all evidence and material of record and applicable provisions of law and regulation.

> (c) The [BVA] shall be bound in its decisions by the regulations of the Veterans' Administration....

> (d) Each decision of the Board shall include—

> > (1) a written statement of the Board's findings and conclusions, and

the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record....

38 U.S.C. § 7104(a), (c), (d)(1) (formerly § 4004).

Where a VA regulation is made potentially applicable through the assertions and issues raised in the record, the Board's refusal to acknowledge and consider that regulation is "arbitrary, capricious, an abuse of discretion," and "not in accordance with the law," and must be set aside as such. 38 U.S.C. § 7261(a)(3) (formerly § 4061); *see Payne*, at 87. Although neither party here mentioned section 4.40, the Board was required to consider its applicability and explain the reasons or bases for its conclusion.

■ Based upon the veteran's repeated assertions, noted above, of pain in his right arm which prevented him from doing his work as a carpenter, we conclude that he submitted a well-grounded claim for a rating for functional loss due to pain. *See Moore v. Derwinski*, 1 Vet.App. 401, 405 (quoting *Murphy v. Derwinski*, 1 Vet.App. 78, 80–81 (1990) that a "well grounded claim is a plausible claim, one which is meritorious on its own or capable of substantiation"). The Board was, therefore, obligated to acknowledge and consider the applicability of section 4.40. Yet the BVA decision contains no discussion of the provision in section 4.40 for a disability rating based on functional loss due to pain.

We conclude that the Board either failed to consider whether the veteran's assertion of disabling pain was supported by evidence sufficient to justify a compensable rating under section 4.40; or, if it did consider the regulations, it failed to say so and provide a statement of its reasons or bases for rejecting the claim for functional loss due to pain. Because the BVA decision contained "neither an analysis of the credibility or probative value" of appellant's assertions of pain, "nor a statement of the reasons or bases for the implicit rejection of [that] evidence," the record is insufficient to inform the appellant of the Board's reasoning or to facilitate review by us.

*Gilbert*, at 58; *see also Smith v. Derwinski*, 1 Vet.App. 235, 237–38 (1991); *Ohland v. Derwinski*, 1 Vet.App. 147, 149–50 (1991).

On the above analysis, therefore, the case would normally be remanded for the Board to evaluate appellant's claim of functional disability due to pain, and for it to provide a clear statement of its decision on that claim, with articulation of the reasons or bases therefor. As is concluded in parts B and C, below, proper assessment of that claim also would require that efforts be made to obtain VA Orlando OPC records and, if obtained, to consider them and that a contemporaneous medical examination of the appellant be conducted. However, as is concluded in part D, below, reversal is the appropriate remedy in this case.

### B.

■ The Board also erred by failing to respond to the veteran's repeated requests for medical records of his treatment at the VA OPC in Orlando. Because of the non-adversarial nature of VA proceedings, VA is statutorily required, once the claimant has presented a well-grounded claim, to assist each claimant in developing the facts of his or her claim. 38 U.S.C. § 5107(a) (formerly § 3007); *see also* 38 C.F.R. § 3.103(a). At a minimum, this obligation includes the duty to search for VA records sought by the claimant. *See Littke v. Derwinski*, 1 Vet.App. 90, 91–92 (1990); *Murphy*, at 81. As we concluded in part A., above, the veteran here has submitted a well-grounded claim.

The veteran's request for the VA Orlando records was presented to the BVA at least three times (R. at 12, 13, 15); yet the record does not reflect any attempt by the BVA to obtain those documents, or even any response to the veteran's requests. The veteran stated that X-rays of his arm were taken at the Orlando OPC and that the doctor in Orlando felt that "something [was] wrong" with the veteran's right arm. R. at 12. In light of these assertions, the Orlando records are certainly potentially "relevant" to the appellant's claim and the BVA should have sought to obtain the

records prior to deciding the case, or explained its failure to do so. *See Godwin v. Derwinski*, 1 Vet.App. 419, 425–26, 427–28 (1991). As we held recently, "inherent in the duty-to-assist obligation and the *Gilbert* explanation mandate is a requirement for the Secretary to respond to a claimant's request for VA assistance one way or the other." *Godwin*, at 425–26.

## C.

■ The BVA erred further with respect to another aspect of the adequacy of the record and the duty to assist (above and beyond the claimant's specific requests for assistance). It is apparent that the BVA based its decision upon a single physical examination report (R. at 3–4) viewed in isolation from the rest of the record. That approach contravenes the clear mandate of the VA regulations which require that disability determinations be based upon the most complete evaluation of the claimant's condition that can feasibly be constructed. *See* 38 C.F.R. §§ 4.1, 4.2, 4.41, 4.42 (1991). Section 4.1 requires that "each disability be viewed in relation to its history" and that there be "emphasis upon the limitation of activity imposed by the disabling condition." Section 4.2 requires that medical reports be interpreted "in light of the whole recorded history" and that "each disability must be considered from the point of view of the veteran working or seeking work." Section 4.10 states that in cases of functional impairment "evaluations are based upon lack of usefulness" and medical examiners must furnish, "in addition to the etiological, anatomical, pathological, laboratory and prognostic data required for ordinary medical classification, full description of the effects of the disability upon the person's ordinary activity."

These requirements for evaluation of the complete medical history of the claimant's condition operate to protect claimants against adverse decisions based on a single, incomplete or inaccurate report and to enable VA to make a more precise evaluation of the level of the disability and of any changes in the condition. *See* 38 C.F.R. §§ 4.2, 3.344(a). These concerns are especially strong in a ratings reduction case such as this. *See Peyton*, at 286–87, 38 C.F.R. § 3.344(a). Whether or not a disability has improved cannot be determined without reference to prior records detailing the history of the condition. *See Karnas v. Derwinski*, 1 Vet.App. 308, 310–11 (1991). As the regulations recognize:

> Different examiners at different times, will not describe the same disability in the same language. Features of the disability which must have persisted unchanged may be overlooked or a change for the better or worse may not be accurately appreciated or described.

38 C.F.R. § 4.2 (1991).

Furthermore, 38 C.F.R. § 3.344(a) (1991) states as to examination reports indicating improvement:

> Rating agencies will handle cases affected by change of medical findings or diagnosis, so as to produce the greatest degree of stability of disability evaluations consistent with the laws and [VA] regulations governing disability compensation and pension. It is essential that the entire record of examinations and the medical-industrial history be reviewed to ascertain whether the recent examination is full and complete, including all special examinations indicated as a result of general examination and the entire case history.

Subsection (c) of section 3.344 limits the application of subsection (a) to "ratings which have continued for long periods at the same level (5 years or more)." Such disabilities are considered "stabilized", and the regulation thus requires a high degree of accuracy in decisions reducing those ratings. Here the appellant had held his 10–percent rating for 11 and a half years before VA reduced it effective January 1, 1989; hence, section 3.344(a) is fully applicable to the instant case.

■ A correlative of both VA's duty to assist the claimant and its duty to consider disabilities in the context of their total history is the obligation to make all possible efforts to obtain and assess records relevant to an evaluation of the disability. This Court has previously held that efforts

by VA to obtain records regarding medical history are an important part of the Department's affirmative duties under 38 U.S.C. § 5107(a) and 38 C.F.R. § 4.2. *See Godwin*, at 425; *Green v. Derwinski*, 1 Vet.App. 121, 123–24 (1991); *Littke*, at 92. This is so whether or not the claimant requests a particular record. As noted above, such efforts become particularly important in cases such as this where VA is seeking to reduce a claimant's disability rating.

In the present case, there are no reports of prior examinations or rating evaluations in the record on appeal. Details of the initial trauma and injury are sketchy and entirely second hand. Copies of prior medical records, including service records at the time of the injury and at discharge, as well as reports of prior VA examinations, may be necessary to evaluate the appellant's disability fully and fairly. They are not in the record on appeal and seem not to have been before the RO or BVA. Furthermore, the circumstances of the injury and its history may be necessary for purposes of determining whether the appellant's claim for disability due to pain is supported by adequate pathology as required by 38 C.F.R. § 4.40. When such gaps in the record exist, VA's duty to assist requires that it attempt to obtain the records detailing the full history of the disability.

■ In addition to obtaining prior records, the "fulfillment of the statutory duty to assist here includes the conduct of a thorough and contemporaneous medical examination" to aid in evaluating the veteran's claim of disabling pain. *EF v. Derwinski*, 1 Vet.App. 324, 326 (1991) (quoting *Green*, at 124); *see also Akles v. Derwinski*, 1 Vet.App. 118, 120 (1991). Where the record does not adequately reveal the current state of the claimant's disability, a VA examination must be conducted. *See Cousino v. Derwinski*, 1 Vet.App. 536, 540 (1991); *Godwin*, at 426–27; *Green*, at 123–24; *Akles*, at 120; 38 C.F.R. §§ 19.182 (1990), 3.328 (1991). To provide an adequate basis for fair adjudication, the examining physician's report must furnish "in addition to the etiological, anatomical, pathological, laboratory and prognostic data required for ordinary medical classification, full description of the effects of disability upon the person's ordinary activity." 38 C.F.R. § 4.10 (1991); *see also* 38 C.F.R. § 4.2, § 4.41 ("it is essential to trace the medical-industrial history of the disabled person from the original injury ... and the course of recovery to date"), § 4.42 ("[w]hen complete examinations are not conducted covering all systems of the body affected by disease or injury, it is impossible to visualize the nature and extent of the service connected disability") (1991).

The report of the September 13, 1988, VA examination failed to address the issue of pain in the veteran's elbow in the detail required. The report noted only that "the olecranon tip is sensitive to pressure" and that the veteran "is working in construction as a carpenter." R. at 3. Accordingly, in order to justify a reduction in this case, VA would have been required, in our view, to provide for a physical examination conducted by a physician who had not previously examined the veteran, in order to describe fully and accurately the nature and effects of the pain in the veteran's elbow. *See Cousino*, at 540; *cf. Hyder v. Derwinski*, 1 Vet.App. 221, 224–25 (1991). In conducting this examination, VA would have to consider the indications of functional loss due to pain as set forth in 38 C.F.R. § 4.40, and to consider each disability "from the point of view of the veteran working or seeking work." 38 C.F.R. § 4.2 (1990). Such an examination report must contain a "full description of the effects of [the] disability upon the person's ordinary activity." 38 C.F.R. § 4.10 (1990).

### D.

■ Having found the above prejudicial errors in the BVA decision, the Court must determine the appropriate remedy. When the issue raised is a rating reduction and the Court determines that the reduction was made without observance of law—here 38 C.F.R. §§ 4.40, 4.45, 4.2, 4.10, 3.344(a)— this Court, acting under 38 U.S.C. § 4061(a)(3)(D), has ordered reinstatement of the prior rating. *See Lehman v. Der-*

*winski,* 1 Vet.App. 339 (1991); *Swan v. Derwinski,* U.S.Vet.App. No. 89–75 (order, Apr. 12, 1991). This approach finds support by analogy in the special procedural prerequisites—60 days' advance notice with detailed material facts and reasons, deferred effective date, and availability of pre-reduction hearing—which VA regulations establish must be met before a rating reduction may be effectuated. *See* 38 C.F.R. § 3.105(e), (g), (h) (1991). It is implicit in these regulations that a service-connected rating reduction is invalid if these procedures are not followed. *Cf. In Re Fee Agreement of Smith,* 1 Vet.App. 492, 496 (1991) (per curiam) (*ultra vires* action of BVA Chairman "must be treated as though it had never been taken").

In the instant case, the Board's decision to reduce the veteran's rating was void *ab initio* since it was made without regard to numerous operative regulations relating to the effect of pain on the flexion of the right elbow, that is, functional loss due to pain, and the need to base any such reduction upon review of the full recorded history of the condition. The veteran was entitled by these regulations to have the pain factor fully and fairly assessed in the context of the entire medical history of his disability before any rating reduction was effectuated. Hence, he should not be subject to the effects of an unlawful rating reduction and that reduction must be vacated and the prior rating restored.

"It is, however, a matter of the Secretary's discretion whether and when he desires to undertake [hereafter] a review of the veteran's disability status." *Swan,* order at 1. When and if the Secretary elects to do so, he will be required to proceed prospectively in a manner consistent with this opinion.

### III. CONCLUSION

The appellant's disability rating for his right elbow was reduced from 10 percent to noncompensable on the basis of a single examination and without consideration either of his claims of continued disability due to functional loss caused by pain or of the entire recorded history of his right-elbow condition. The BVA also failed to provide an adequate statement of the reasons or bases for aspects of its decision or to assist the appellant in obtaining requested VA medical records. For these reasons, the decision would normally be vacated and the matter remanded to the Board for further development of the record, including a contemporaneous medical examination, and consideration, with a statement of reasons or bases, of the applicability of the regulations discussed above, in accordance with this opinion.

However, because this is a reduction case, not an increase case, as explained in part III.D., above, the BVA decision is reversed and the case is remanded to the Board with instructions that appellant's disability rating of 10 percent be reinstated, retroactive to the date of reduction, January 1, 1989.

For the foregoing reasons, the Secretary's motion for summary affirmance is denied.

REVERSED AND REMANDED WITH INSTRUCTIONS.