# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 13-0370

Michael A. Hudgens, Appellant,

v.

Sloan D. Gibson,
Acting Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Argued April 22, 2014             Decided             June 27, 2014)

*Thomas E. Andrews III*, of Columbia, South Carolina, for the appellant.

*Nathan P. Kirschner*, with whom *Will A. Gunn,* General Counsel, *David L. Quinn*, Acting Assistant General Counsel, *Rebecca A. Baird*, Deputy Assistant General Counsel, and *Justin P. Zimmer*, all of Washington, D.C., were on the brief, for the appellee.

Before KASOLD, *Chief Judge*, and LANCE and DAVIS, *Judges.*

DAVIS, *Judge*, filed the opinion of the Court. KASOLD, *Chief Judge*, filed an opinion dissenting in part and concurring in part.

DAVIS, *Judge*: U.S. Army veteran Michael A. Hudgens appeals through counsel a December 26, 2012, decision of the Board of Veterans Appeals (Board) that, in part, (1) denied a disability rating greater than 10% for degenerative joint disease of the right knee with accompanying limitation of extension prior to November 25, 2009; (2) denied a disability rating greater than 10% for instability of the right knee prior to November 22, 2008; and (3) upheld the reduction of Mr. Hudgens's 10% disability rating for right knee instability from November 22, 2008, to November 24, 2009.[1] On appeal, Mr. Hudgens argues, among other things, that the Board erred in concluding that 38 C.F.R. § 4.71a, Diagnostic Code (DC) 5055 does not apply to partial knee replacements. A panel

---

[1] The Court notes that it lacks jurisdiction over (1) the claims of entitlement to service connection for nerve damage of the cervical spine and increased evaluations for degenerative joint disease and instability of the right knee from November 25, 2009, and (2) the issue of the appellant's entitlement to a total disability rating based upon individual unemployability, because these matters were remanded by the Board. *See* 38 U.S.C. §§ 7252(a), 7266(a); *Breeden v. Principi*, 17 Vet.App. 475, 478 (2004) (a Board remand "does not represent a final decision over which this Court has jurisdiction").

decision is appropriate as this is an issue of first impression. *See Frankel v. Derwinski*, 1 Vet.App. 23, 25-26 (1990). For the reasons stated below, the decision of the Board will be in part reversed and in part set aside and the matters remanded for further adjudication.

## I. BACKGROUND

Mr. Hudgens served in the U.S. Army from August 1977 to August 1980. He injured his right knee in service. In 2003, he underwent a unicompartmental right knee arthroplasty, or partial knee replacement. In 2006, Mr. Hudgens applied for disability compensation for his knee. The regional office (RO) awarded him a 10% disability rating for degenerative joint disease, claimed as right knee injury. In 2007, the RO awarded another 10% rating, this time based on knee instability. In 2009, the RO reduced the rating for right knee instability from 10% to a noncompensable rating, effective November 22, 2008.

Before the Board, Mr. Hudgens argued that he should be rated by analogy under DC 5055 ("Knee replacement (prothesis)"). The Board declined to do so because it determined that DC 5055 applies only to "the total prosthetic replacement of the knee joint," and not to partial knee replacements such as Mr. Hudgens's. The Board also upheld the RO's reduction of Mr. Hudgens's rating for right knee instability from November 22, 2008, to November 24, 2009.

## II. THE PARTIES' ARGUMENTS

Mr. Hudgens raises three arguments on appeal. First, he argues that the Board erred in concluding that DC 5055 applies only to total knee replacements where, by its plain language, it applies to all knee replacements. Should the Court find the regulatory language ambiguous, Mr. Hudgens argues that the Court should resolve interpretive doubt in favor of the veteran. If the Court should reach the issue of the Secretary's interpretation of its regulation, Mr. Hudgens urges the Court to consider that 11 Board decisions have awarded benefits under DC 5055 based on partial knee replacements, while only 3 Board decisions (including the one here on appeal) have denied benefits on the basis that DC 5055 applies only to total knee replacements.

The Secretary responds that the plain language of DC 5055 shows that it applies to the total, compound knee joint. If the Court should find the language ambiguous, the Secretary argues that

the Court must defer to his regulatory interpretation as expressed on appeal and in a 2009 VA *Compensation and Pension Service Bulletin*, and that the Court should not consider Board decisions as evidence of the Secretary's regulatory interpretation.

Second, Mr. Hudgens argues that the Board erred in upholding the reduction of his 10% rating for right knee instability because the record contains evidence of instability that was not discussed by the Board. The Secretary concedes that the Board erred in stating that there was no evidence of instability where the record includes a June 2009 medical note stating that Mr. Hugdens's knee dislocated on extension and a November 2009 medical note stating that his knee buckled and gave out. However, the Secretary argues that remand, rather than reversal, is warranted.

Third, Mr. Hudgens argues that the Board erred in not addressing whether a higher disability rating was warranted under DC 5258 ("Cartilage, semilunar, dislocated, with frequent episodes of 'locking,' pain, and effusion into the joint."), where the issue was raised by the evidence. The Secretary argues that DC 5258 is not applicable because there is no evidence of dislocated cartilage. However, the Secretary concedes that remand is warranted for the Board to discuss whether a higher disability rating was warranted under DC 5259 ("Cartilage, semilunar, removal of, symptomatic"), which applies to the removal of cartilage from the knee.

### III. ANALYSIS

#### A. Interpretation of DC 5055

*1. Partial knee replacements are not covered by DC 5055.*

The plain language of DC 5055[2] does not apply to partial knee replacements. Regulatory interpretation begins with the plain meaning of the words used. *Brown v. Gardner*, 513 U.S. 115, 120 (1994); *see also Smith v. Brown*, 35 F. 3d 1516, 1523 (Fed. Cir. 1994) (the canons of statutory interpretation apply to interpreting regulations). DC 5055 refers to "[p]rosthetic replacement of knee joint." "Knee joint" is defined as "the compound joint at the knee, formed between the articular

---

[2] In relevant part, DC 5055 states:
"5055 Knee replacement (prosthesis).
      Prosthetic replacement of knee joint:
        . . . .
        Minimum rating . . . . 30%."

surface of the patella, the condyles and patellar surface of the femur, and the superior articular surface of the tibia."  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 159 (32d ed. 2012); *see Mallard v. U.S. Dist. Court*, 490 U.S. 296, 301 (1989) (using dictionary to assist in review of plain meaning of statute).  The regulation therefore applies to prosthetic replacements of the compound knee joint, which includes all three compartments of the knee.  Nothing in the plain language of the regulation indicates that it applies to replacements of less than a complete knee joint, such as the unicompartmental knee prosthesis that Mr. Hudgens has.

The conclusion that the regulation does not apply to partial knee replacements also is consistent with the overall regulatory scheme, which "should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error." *Roper v. Nicholson*, 20 Vet.App. 173, 178 (2006) (quoting 2A N. SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION, § 46:06 (6th ed. 2000); *see United States v. Hartwell*, 73 U.S. (6 Wall.) 385, 396 (1868) (courts should construe statutory language so as to harmonize with context and promote legislative policy).  DC 5054, DC 5055's neighbor in the regulatory subpart titled "Prosthetic Implants," applies to hip replacements.  In relevant part, DC 5054 mirrors the language of DC 5055, except that instead of stating "[p]rosthetic replacement of knee joint," it states "[p]rosthetic replacement of the head of the femur *or* of the acetabulum."[3]  (emphasis added).  The Secretary's choice of this disjunctive regulatory language in DC 5054 shows that he knew how to provide benefits for a prosthesis replacing part of a joint, as opposed to the entire joint, when he intended to.  Interpreting DC 5055's "knee joint" language to include both total and partial knee joint protheses would render superfluous the Secretary's language in DC 5054 specifically providing benefits to veterans with partial hip prostheses. *Roper*, *supra*; *see also Bailey v. United States*, 516 U.S. 137, 146 (1995) ("We assume that Congress used two terms because it intended each term to have a particular, nonsuperfluous meaning.").

The Court's decision in *Jones v. Shinseki*, 26 Vet.App. 56 (2012), is instructive.  In *Jones*, the Court considered whether "the Board committed legal error by considering the effects of

---

[3]The hip joint is "the joint formed between the head of the femur and the acetabulum of the hip bone." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 159 (32nd ed. 2012).

medication on the appellant's IBS [(irritable bowel syndrome)] when those effects were not explicitly contemplated by the rating criteria." 26 Vet.App. at 61. The Court held that the Secretary's "failure to include the effects of medication as a criterion to be considered under DC 7319 while including such effects as criteria under other DCs must therefore be read as a deliberate choice." *Id.* at 62. Utilizing the cannons of construction, the Court reasoned that "[t]he Secretary has demonstrated in other DCs that he is aware of how to include the effect of medication as a factor to be considered when rating a particular disability." *Id.* Employing this reasoning to Mr. Hudgens's case, DC 5055 applies only to total knee replacements, as the Secretary has demonstrated in other parts of § 4.71(a) that he is aware of how to include partial joint replacements as part of disability rating criteria in other parts of § 4.71(a). *See Heino v. Shinseki*, 683 F.3d 1372, 1379 (Fed. Cir. 2012) ("It is well settled that '[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purportedly in the disparate inclusion or exclusion.'" (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983))). Accordingly, the plain language of the regulation and its place in the overall regulatory scheme make clear that DC 5055 is intended to apply to total knee replacements.[4]

Generally, if the regulation's language makes its meaning clear, "that is the end of the matter." *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993) (quoting *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984)). Because it is clear from the regulatory language that partial knee replacements are not included in DC 5055, the Court need not address the parties' arguments regarding whether the Secretary's currently offered regulatory interpretation represents his considered view on the matter, *see Mason v. Shinseki*, 743 F.3d 1370 (Fed. Cir. 2014), or whether the Court may rely on nonprecedential Board decisions when making this determination, *but cf. Lynch v. Gober*, 11 Vet.App. 22, 27 (1997) ("It is well established that [Board] decisions are of no precendetial value before the [Board] or this Court."); 38 C.F.R. § 20.1303 (2013) (providing that "previously issued Board decisions will be considered binding only with regard to the specific case decided").

---

[4] This interpretation is not contrary to the Supreme Court's mandate that "interpretive doubt is to be resolved in the veteran's favor." *See Brown v. Gardner*, 513 U.S. 115, 117-19 (1994). Rather, the Court holds that, here, there is simply no ambiguity to resolve.

Indeed, although our dissenting colleague struggles mightily to do so, he cannot conjure ambiguity in DC 5055 when there simply is none. *See Good Samaritan Hosp.*, *supra*; *see also Tropf v. Nicholson*, 20 Vet.App. 317, 321 n.1 (2006) (noting that "a statute is ambiguous only when the application of the ordinary meaning of words and rules of construction to the plain language of the regulation fails to answer the question at issue") (citing *Bell Atl. Tel. Cos. v. FCC*, 131 F.3d 1044, 1047 (D.C. Cir. 1997) (ambiguity is a conclusion reached when the question presented is not answered "at the level of literal language")). Moreover, though Mr. Hudgens and the dissent note that there are 11 Board decisions that rate partial knee replacements under DC 5055, assuming we can consider such decisions for their proffered purpose[5]—the majority of which the Court notes do not appear in the record of proceedings before the Court, *see generally Kyhn v. Shinseki*, 716 F.3d 572, 578 (Fed. Cir. 2013) (holding that this Court is prohibited from considering evidence that was not in the record before the Board and engaging in factfinding in the first instance)—it is "well established that the unchallenged historical practice of the Secretary is not evidence that the practice is correct." *Tropf*, 20 Vet.App. at 321 n.1 (citing *Brown*, 513 U.S. at 112 ("'The length of regulations' unscrutinized and unscrutinizable existence' [does] not alone . . . enhance any claim to deference." (quoting *Gardner v. Brown*, 5 F.3d 1456, 1463-64 (Fed. Cir. 1993))); *See also Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 399-400 (2008) (holding that an agency's interpretation expressed its considered view when the relevant interpretive statement had been published in an

---

[5] Contrary to the dissent's suggestions otherwise, the Board is *not* the body tasked with interpreting regulations on the Secretary's behalf. Rather, Congress was unequivocally clear that the Board is to be bound by "regulations by the Department, instructions of the Secretary, and the precedential opinions of the chief legal officer of the Department." *See* 38 U.S.C. § 7104(c); *see also* 38 C.F.R. § 20.1303 (providing that "previously issued Board decisions will be considered binding only with regard to the specific case decided."); *see also* 57 Fed. Reg. 4088, 4103 (Feb. 3, 1992) (noting the *ex parte* nature of Board proceedings and explaining that "[q]uestions of fairness would arise by, in effect, making a [Board] decision precedential when the Department has no opportunity to present and defend its position in the proceeding. Further, VA may not appeal a [Board] decision to the [Court]. . . . [U]niformity will be achieved on important questions through precedent decisions of the United States Court of Veterans Appeals."). Stated otherwise, the Secretary is tasked with establishing VA policy; the Board is tasked with following such established policy. *See* 38 U.S.C. § 20.1303 (providing that although "prior decisions in other appeals may be considered in a case," the Board is not bound by these decisions and must still decide a case "on the basis of the individual facts of the case in light of applicable procedure and substantive law").

agency interpretive manual for several years, even though implementation of the interpretation had been "uneven").[6]

## 2. Partial Knee Replacements Rated by Analogy

Although the Board did not err in determining that the plain language of DC 5055 applies to total knee prostheses, remand is nonetheless warranted for the Board to adequately address whether Mr. Hudgens's partial knee replacement should be rated by analogy under DC 5055, which contemplates symptomatology including weakness, pain, and limitation of motion, or under another DC. When the Secretary's regulations do not provide DCs for specific disorders, VA may evaluate those conditions under codes for similar or analogous disorders. *Lendenmann v. Principi*, 3 Vet.App. 345, 351 (1992) (citing 38 C.F.R. § 4.20). In determining whether an unlisted condition should be rated by analogy, the Board should address (1) whether the "functions affected" by the ailments are analogous; (2) whether the "anatomical localization" of the ailments is analogous; and (3) whether the "symptomatology" of the ailments is analogous. *Id.*

In this case, the Board's decision addresses none of the factors for rating analogous conditions, even though Mr. Hudgens specifically asserted that his partial knee replacement should be rated by analogy under DC 5055. Record (R.) at 11 ("The Veteran argues that his November 2003 surgery was 'analogous' to total knee replacement, and that he is entitled to a 30 percent 'minimum' rating under . . . [DC] 5055."); *see Schafrath v. Derwinski*, 1 Vet.App. 589, 593 (1991) (Board must consider and discuss all applicable provisions of law and regulation where they are made "potentially applicable through the assertions and issues raised in the record"). The Board's failure to adequately address Mr. Hudgens's analogy argument renders its statement of reasons or bases inadequate and warrants remand. *Id.*; *see also Tucker v. West*, 11 Vet.App. 369, 374 (1998) (remand is appropriate "where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate"); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995) (Board's statement "must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court").

---

[6] In placing substantial weight on the fact that the Secretary has not taken any action with respect to these 11 Board decisions, the dissent seems to do no more than invite the Secretary to initiate clear and unmistakable error proceedings in cases not currently before the Court. We, however, extend no such invitation.

### B. Rating Reduction

As the parties agree, the Board erred in upholding the reduction of Mr. Hudgens's 10% rating for right knee instability. The Board found that the reduction was warranted because there was no evidence of knee instability, but the record includes evidence that, during the relevant period, Mr. Hudgens's knees buckled and gave out (R. at 526), and dislocated on extension (R. at 700). The Board failed to address this favorable evidence. *Gutierrez v. Principi*, 19 Vet.App. 1, 9 (2004) (Board's reasoning flawed when it fails to discuss adequately evidence in support of claim). Accordingly, its statement of reasons or bases is inadequate, and its specific finding of no evidence of knee instability is clearly erroneous. *Id.*; *see also Butts v. Brown,* 5 Vet.App. 532, 534 (1993) (en banc) (Court reviews findings of fact under the "clearly erroneous" standard of review); *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990) ("'A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948))). Although the Secretary argues for remand, reversal is the proper remedy as "VA's failure to observe applicable law and consider all relevant evidence renders reduction or severance decisions . . . 'void ab initio.'" *King v. Shinseki*, 26 Vet.App. 484, 492 (2014); *Schafrath*, 1 Vet.App. at 596 (holding that the Board provided inadequate reasons or bases for its decision to uphold the reduction of the appellant's rating, and reversing the Board decision and remanding the case "with instructions that [the] appellant's disability rating . . . be reinstated" because it was "a reduction case, not an increase case"). Accordingly the Board's decision to uphold the rating reduction will be reversed and this matter remanded with orders to reinstate the previous rating. *Id*.

### C. Increased Rating

Mr. Hudgens argues that the Board erred in not addressing whether a higher disability rating was warranted under DC 5258 ("Cartilage, semilunar, dislocated, with frequent episodes of 'locking,' pain, and effusion into the joint"), when the issue was raised by evidence of knee dislocation, swelling, and pain. The Secretary disagrees that the Board should have applied DC 5258 because there is no evidence of dislocated cartilage. However, as Secretary concedes, remand is warranted for the Board to discuss whether a higher disability rating was warranted under DC 5259 ("Cartilage, semilunar, removal of, symptomatic"), which applies when there are symptoms associated with the

8

removal of semilunar cartilage. *See Schafrath*, 1 Vet.App. at 593 (Board must discuss all regulations reasonably raised by the evidence). Although the Board mentioned DC 5259, it failed to address the evidence of right knee dislocation, swelling, and pain or explain why they are not evidence of "cartilage, semilunar, removal of, symptomatic." DC 5259. The Board's failure to do so renders its statement of reasons or bases inadequate and warrants remand. *Id.* On remand, Mr. Hudgens may raise, and the Board must address, his argument regarding the applicability of DC 5258, as well as any other argument or evidence offered in support of the remanded matter. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002).

## IV. CONCLUSION

Upon consideration of the foregoing, that part of the Board's December 26, 2012, decision that (1) denied a disability rating greater than 10% for degenerative joint disease of the right knee with accompanying limitation of extension prior to November 25, 2009, and (2) denied a disability rating greater than 10% for instability of the right knee prior to November 22, 2008 is SET ASIDE, and the matter REMANDED for further adjudication. That part of the Board's decision upholding the reduction of Mr. Hudgens's 10% disability rating for right knee instability from November 22, 2008, to November 24, 2009, is REVERSED, and the matter is REMANDED for the Board to reinstate the Mr. Hudgens's 10% rating effective November 22, 2008.

KASOLD, *Chief Judge*, dissenting in part and concurring in part:

I respectfully dissent from the majority's decision that 38 C.F.R. § 4.71a, DC 5055 (2013), does not apply to partial knee replacements. That DC 5055 is anything but clear in its scope is reflected by the fact that it does not answer the question as to whether it covers only total knee replacements or whether it also covers partial knee replacements. *See*, *e.g.*, *Bell Atl. Tel. Cos. v. FCC*, 131 F.3d 1044, 1047 (D.C. Cir. 1997) (noting that ambiguity is a conclusion reached when the question presented is not answered "at the level of literal language"). Ambiguity also is reflected by the fact the appellant has submitted 11 Board decisions rating partial knee replacements under DC 5055, as well as the fact that the Secretary stated at oral argument that he could identify only 3 Board

decisions finding that DC 5055 applies only to total knee replacements, with the Board decision now on appeal being 1 of the 3.[7]

The lack of clarity in DC 5055 is confirmed by the fact that the Secretary has informed the Court that no action is being taken to modify the 11 purportedly errant Board decisions based on clear and unmistakable error, or because they are otherwise clearly erroneous, which says much about the Secretary's litigation position – and the majority's decision – that the scope of DC 5055 is clear on its face. Succinctly stated, (1) DC 5055 addresses "Knee replacement (prosthesis)" and nothing in the DC restricts it to a total knee replacement as opposed to a partial knee replacement, and (2) the Board has interpreted DC 5055 to address full knee replacements at times, and partial knee replacements at other times, with the more consistent interpretation being that DC 5055 applies to partial knee replacements!

The Board renders the final decision for the Secretary on all questions in matters affecting the provision of benefits, subject only to the statutes governing such benefits and related judicial rulings, as well as VA regulations, instructions of the Secretary, or VA General Counsel opinions. *See* 38 U.S.C. § 7104(c). Here, there is no specific statute or judicial ruling (until today) on the issue before the Court. There is no VA General Counsel opinion or instruction of the Secretary. We have only a regulation written many, many years ago, and at least 11 Board decisions that have interpreted

---

[7] The majority's concern that the Board decisions are not in the record and their citation to *Kyhn v. Shinseki*, 716 F.3d 572, 578 (Fed. Cir. 2013), which held that the Court cannot find facts in the first instance, is perplexing. Because DC 5055 addresses knee replacements without any reference to it being limited to full knee replacements, we can and should take judicial notice how the Board has interpreted this DC. *See Smith v. Derwinski*, 1 Vet.App. 235, 238 (1991) (Court "may take judicial notice of facts not subject to reasonable dispute"). To ignore the Board's interpretations is to ignore the history of interpretation of this DC and to foster inconsistent and inequitable application. The majority's citations to *Federal Express Corp. v. Holowecki*, 552 U.S. 389 (2008) and *Tropf v. Nicholson*, 20 Vet.App. 317 (2006) are inapposite. *Holowecki* involved some degree of inconsistency in over 175,000 inquiries per year, while this case involves 14 reported Board decisions interpreting the regulation in question, and the majority of those are contrary to the Secretary's interpretation preferred in this litigation. *Tropf* noted that the "unchallenged historical practice of the Secretary is not evidence that the practice is '*correct*'," 20 Vet. App. at 321, n.1 (emphasis added), but that is in the context of a regulation that does not support that practice. Despite the majority's efforts, they cannot create clarity where clarity does not exist; the regulation (DC 5055) in question in this case is decidedly unclear in its scope as it could cover full or partial knee replacements, and the Board's varied interpretations only support that conclusion. The Board decisions reflect that there is no consistent interpretation of DC 5055. Given the lack of any consistent interpretation, we should apply *Brown v. Gardner*, 513 U.S. 115, 118 (1994), as noted in the text of my dissent – which would then render the "correct" interpretation, until and unless the DC properly is amended thereafter.

DC 5055 to cover partial knee replacements and only 3 that have interpreted it as limited solely to total knee replacements.[8]

Under such circumstances, there is no room for any finding that the regulation clearly is limited to total knee replacements, and there should be no room for any ruling that permits an inequitable application of DC 5055 dependant on the whim of the particular veterans law judge rendering a Board decision, particularly when the Secretary does not intend to correct what would be clearly erroneous decisions – action he presumably would take if the regulation were clearly limited to total knee replacements, as purported by the Secretary in this litigation.[9] *See* 38 U.S.C. § 7111 (Board may revise decisions based on clear and unmistakable error (CUE)); § 7103(c) (essentially the same); § 5109A (Secretary may revise Board decisions based on CUE).

Although deference generally is due the Secretary on the interpretation of his own regulations, the Board decisions reflect that the Secretary does not have a consistent interpretation. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842-43 (1984) (holding that in the absence of congressional intent, a court must defer to an agency's interpretation of a statute as long as the interpretation is based on a permissible construction of the statute); *see also Auer v. Robbins*, 519 U.S. 452, 461-62 (1997) (noting Secretary's litigation position may not be a

---

[8] The majority's view that the Board does not interpret regulations is wholly inconsistent with our precedent, and, contrary to their assertions, not supported by the statutes and regulations governing the jurisdiction of the Board. *See* 38 U.S.C. § 7104 (Board decisions are rendered on applicable provisions of law and regulation); *see, e.g.*, *Mariano v. Principi*, 17 Vet.App. 305, 318 (2003) (remanding for Board to address the two possible interpretations of DC 5201, noting that "it is preferable for the Secretary to undertake the initial consideration of this matter"); *Hatlestad v. Derwinski*, 1 Vet.App. 164, 167 (1991) (remanding for Board to address the interrelationship of five regulatory provisions and resolve apparent conflicts in the language of those provisions); *see also Bellezza v Principi*, 16 Vet.App. 145, 148 (2002) (reviewing whether Board's interpretation of regulation was reasonable); *Webb v. Brown*, 7 Vet.App. 122, 124 (1994) (remanding for Board to consider interpretation of VA regulations in light of other regulations and statutory provisions); *Payne v. Derwinski*, 1 Vet.App. 85, 87 (1990) (same). The majority appears to confuse the concept that Board decisions are not precedential with the fact that the Board does indeed interpret regulations, and the fact that those interpretations represent the Secretary's view until and unless (1) the Secretary clarifies the regulation or issues an instruction, *see* 38 U.S.C. § 7104(c), (2) the VA General Counsel renders a contrary opinion, *id.*, or (3) the Board's interpretation is overturned judicially, *see* 38 U.S.C. § 7261 (court's scope of review).

[9] My colleagues misconstrue the intent behind my noting that the Secretary has indicated he will not take any action to correct Board decisions that have misapplied DC 5055, as he now states it should be interpreted. I note the inaction not to invite such action, but to highlight the fact that the very ambiguity of DC 5055 precludes such action. *Cf. Fugo v. Brown*, 6 Vet.App. 40, 43 (1993) ("CUE is a very specific and rare kind of 'error.' It is the kind of error, of fact or of law, that when called to the attention of later reviewers *compels* the conclusion, to which reasonable minds could not differ, that the result would have been *manifestly* different but for the error." (emphasis in original)).

" '*post hoc* rationalization' advanced by an agency seeking to defend past agency action against attack." (internal citations omitted)).

In my opinion, this is when *Gardner* trumps *Chevron* with regard to regulatory interpretation. *See Brown v. Gardner*, 513 U.S. 115, 118 (1994) ("[I]nterpretive doubt is to be resolved in the veteran's favor . . . ."); *see also Heino v. Shinseki*, 683 F.3d 1372, 1379 n.8 (Fed. Cir. 2012) (noting lack of clarity on how *Gardner* fits with *Chevron*, and comparing "*Nielson v. Shinseki*, 607 F.3d 802, 808 (Fed. Cir. 2010) (stating that the [*Gardner*] canon 'is only applicable after other interpretive guidelines have been exhausted, including *Chevron*'), *with Disabled Am. Veterans v. Gober*, 234 F.3d 682, 692, 694 (Fed. Cir. 2000) (stating that the [*Gardner*] canon 'modif[ies] the traditional *Chevron* analysis')"); *Smith v. Brown*, 35 F.3d 1516, 1523 (Fed. Cir. 1994) (noting that the canons of statutory interpretation apply to interpreting regulations).

Succinctly stated, in the face of inconsistent interpretations of a regulation, there is no basis to defer to the Secretary's proffered interpretation, *see Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 515 (1994) ("[A]n agency's interpretation of a statute *or regulation* that conflicts with a prior interpretation is 'entitled to considerably less deference' than a consistently held agency view . . . .") (emphasis added) (internal quotation marks omitted) (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 446 n.30 (1987)); *see also Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2168 (2012) (noting "[o]ur practice of deferring to an agency's interpretation of its own ambiguous regulations . . . creates a risk that agencies will promulgate vague and open-ended regulations that they can later interpret as they see fit"), and ambiguity should be interpreted in the light most favorable to the veteran, *see Gardner* and *Smith*, both *supra*.

Although the Secretary points to an unsigned bulletin in support of his interpretation, this bulletin does not constitute a General Counsel opinion or instruction to the Board from the Secretary; accordingly, the bulletin is not binding on the Board, which renders final decisions for the Secretary. *See* 38 U.S.C. § 7104 (a), (c).

As noted above, DC 5055 is indeed ambiguous; accordingly, I would apply *Gardner*, reverse the reduction in disability rating, and remand the matter for readjudication consistent therewith. I further note that because our panel decisions are precedential, such a holding would be binding on the Secretary until and unless he undertook the process necessary for revising his regulation. *See*

12

*Nat'l Org. of Veterans Advocates, Inc. v. Sec'y of Veterans Affairs*, 710 F.3d 1328, 1331-32 (Fed. Cir. 2013) (noting that in order to change a regulation after a precedential Court decision, Secretary must follow notice-and-comment requirements); *Suozzi v. Brown*, 10 Vet.App. 307, 311 (1997) ("VA is bound to follow the controlling precedential decisions of this Court.").

With regard to the remainder of the majority decision, I note that even when DC 5055 applies, the Board should consider whether rating by analogy to another DC would provide a higher disability rating, as might be the case here, where DC 5055 appears to overlap with 38 C.F.R. § 4.71a, DCs 5256-5263 (2013). Accordingly, I agree with that part of the majority decision, including the reversal of the reduced rating, and the remand.