Citation Nr: 1546212 
Decision Date: 10/30/15 Archive Date: 11/10/15

DOCKET NO. 08-38 289 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Oakland, California


THE ISSUES

1. Entitlement to service connection for hypertension, to include as secondary to service-connected posttraumatic stress disorder (PTSD). 

2. Entitlement to an initial rating in excess of 10 percent for postsurgical scar of the left knee. 


REPRESENTATION

Veteran represented by: Veterans of Foreign Wars of the United States


ATTORNEY FOR THE BOARD

A-L Evans, Associate Counsel



INTRODUCTION

The Veteran served on active duty from June 1966 to April 1970 and from April 1971 to June 1987. 

This matter is before the Board of Veterans' Appeals (Board) on appeal of an October 2006 rating decision of the Oakland, California, Regional Office (RO) of the Department of Veterans Affairs (VA).

In September 2010, the Board reopened a previously denied claim of service connection for hypertension and denied a rating in excess of 20 percent for residuals of status post left knee meniscectomy. The Board also remanded the hypertension claim for further development and the claim for an initial rating in excess of 10 percent for scar of the left knee for issuance of a statement of the case (SOC).

In a June 2015 correspondence, the Veteran raised the issue of entitlement to a rating in excess of 20 percent for residuals of status post left knee meniscectomy. A review of the record shows that the issue has not been adjudicated by the agency of original jurisdiction. Therefore, the Board does not have jurisdiction over it, and it is referred to the RO for appropriate action.

The appeal is REMANDED to the agency of original jurisdiction. VA will notify the appellant if further action is required.


REMAND

The Board finds that additional development is needed in this case for the claims on appeal.

The Veteran seeks service connection for hypertension as directly related to service or as caused or aggravated by a service-connected disability. The Veteran asserts that his claimed disability is affected by his service-connected PTSD, due to his anxiety, lack of sleep and vivid memories of his active duty service.

In the September 2010 remand, the Board remanded the hypertension issue to afford the Veteran a VA examination. The Board requested the VA examiner determine the diagnosis, onset and etiology of any chronic hypertension disorder. 

In a May 2014 VA examination, the VA examiner opined that the Veteran's hypertension was less likely than not incurred in or caused by the claimed in-service injury, event or illness. The examiner reviewed the Veteran's claims file and noted that the February 1987 separation examination indicated that the Veteran had high or low blood pressure, but at that time the Veteran's blood pressure was 136/88. The VA examiner also noted a review of the post-service private medical note from Dr. H., but noted that there was indication of a diagnosis of hypertension or of any medications for treatment while in service, or the year after. 

The VA examiner also stated that the Veteran's hypertension was likely primary. He noted that the biggest risk factors included increased age and a positive family history. It was also noted that there were many other factors which were associated with hypertension and among these was PTSD. The VA examiner stated that the Veteran's PTSD, as noted in the December 2013 VA examination report, was clinically stable and that the Veteran was not taking any medication or seeing a Mental Health [provider]. The VA examiner opined that given that the Veteran has a controlled blood pressure on just one medication and that his PTSD is stable, that his hypertension had less likely than not been aggravated by his PTSD. 

The Board finds this rationale is not wholly sufficient as it does not squarely address whether the Veteran's hypertension was caused by his service-connected PTSD. Barr v. Nicholson, 21 Vet. App. 303 (2007); Stefl v. Nicholson, 21 Vet. App. 120, 125 (2007); 38 C.F.R. § 3.159(c)(4). Therefore, a new VA examination is needed to address the medical issues raised by the theories of entitlement.

The Veteran also seeks an initial rating in excess of 10 percent for postsurgical scar of the left knee. In a November 2007 notice of disagreement, the Veteran stated that his scar was tender and deep. The Veteran was last afforded a VA examination in May 2006, over nine years ago. Because there may have been changes in the Veteran's condition, the Board finds that a new examination is needed to fully and fairly evaluate the Veteran's claim for an increased rating for a postsurgical scar. Allday v. Brown, 7 Vet. App. 517 (1995); Schafrath v. Derwinski, 1 Vet. App. 589 (1991).

Additionally, the Veteran was granted service connection for the postsurgical scar of the left knee in an October 2006 rating decision and was assigned a disability rating under Diagnostic Code 7804. The Board notes that on September 23, 2008, VA amended the criteria for evaluating scars. See 73 Fed. Reg. 54708 (Sept. 23, 2008). The amendments are only effective for claims filed on or after October 23, 2008, although a claimant may request consideration under the amended criteria. In this case, the Veteran has not requested consideration under the amended criteria. Therefore, the Board will consider the Veteran's claim under the former criteria.

Lastly, the Veteran noted in a May 2014 correspondence that he had moved and was now receiving treatment from the VA Medical Center (VAMC) in Charleston, South Carolina. In addition, he noted that he had been treated for hypertension at the VA Outpatient Clinic (VAOPC) in Hinesville, Georgia. A review of the entire electronic claims file does indicate that records from either VA facilities have been obtained. Ongoing medical records must also be obtained in light of the remand. 38 U.S.C.A. § 5103A(c); see also Bell v. Derwinski, 2 Vet. App. 611 (1992) (VA medical records are in constructive possession of the agency, and must be obtained if the material could be determinative of the claim).

Accordingly, the case is REMANDED for the following actions:

1. Obtain copies of the Veteran's outstanding VA treatment records, including those from the Charleston VAMC and the Hinesville VAOPC. 

2. Thereafter, schedule the Veteran for a VA examination conducted by a VA examiner other than the VA examiner who provided the May 2015 examination to determine the nature and etiology of the Veteran's claimed hypertension disability. The entire electronic claims file must be reviewed by the examiner. 

The examiner is asked to specifically address the following questions:

a. Is it at least as likely as not (50 percent or greater probability) that any currently identified hypertension disability had its onset during, or is otherwise related to, the Veteran's active service?

b. Is it at least as likely as not (50 percent or greater probability) that any currently identified hypertension disability was caused by the Veteran's service-connected PTSD?

c. Is it at least as likely as not (50 percent or greater probability) that any currently identified hypertension disability was aggravated (increased in severity beyond the natural progress of the condition) by the Veteran's service-connected PTSD? If aggravation is found, the examiner should provide the baseline manifestations of the Veteran's hypertension prior to aggravation by the service-connected PTSD.

The examiner is asked to consider the Veteran's statements regarding the onset and symptoms. The examiner must provide a comprehensive report including complete rationales for all opinions and conclusions reached. 

3. Schedule the Veteran for a VA compensation examination to assess the severity of his service-connected postsurgical scar of the left knee. The entire electronic claims file must be reviewed by the examiner. 

As noted above, the claim was received prior to the amendment of the rating criteria for evaluating scars under 38 C.F.R. § 4.118, Diagnostic Code 7804. Therefore, after conducting an examination of the Veteran and performing any clinically-indicated diagnostic testing, the examiner must identify and describe all scars of the left knee, to include specifying whether any scar found is a superficial scar that is painful on examination. The examiner should note that a superficial scar is one not associated with underlying soft tissue damage. 

The examination report must include a complete rationale for all opinions expressed.

4. Finally, readjudicate the issues on appeal, including the scar rating claim under the previous rating criteria. If any of the benefits sought remain denied, issue a supplemental statement of the case and return the case to the Board.

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the United States Court of Appeals for 

Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




_________________________________________________
RYAN T. KESSEL
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2015).