http://www.va.gov/vetapp16/Files5/1641924.txt

Citation Nr: 1641924 
Decision Date: 10/31/16 Archive Date: 11/08/16

DOCKET NO. 15-38 861A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in San Juan, the Commonwealth of Puerto Rico

THE ISSUES

1. Entitlement to an initial rating in excess of 70 percent for psychosis, not otherwise specified (originally described as posttraumatic stress disorder (PTSD), prior to April 29, 2014.

2. Entitlement to an effective date earlier than April 29, 2014, for a grant of special monthly compensation based on housebound status.

3. Entitlement to automobile or other conveyance and/or adaptive equipment. 

REPRESENTATION

Appellant represented by: Disabled American Veterans

ATTORNEY FOR THE BOARD

M. Pryce, Associate Counsel

INTRODUCTION

The Veteran served on active duty from July 1952 to March 1954.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a June 2013 rating decision which granted service connection for a chronic psychiatric disability, now rated as psychosis, not otherwise specified; a December 2014 rating decision which granted an increased total disability rating for psychosis, effective April 29, 2014, and also granted entitlement to special monthly compensation based on housebound status; and a November 2015 rating decision which denied entitlement to automobile or other conveyance and/or adaptive equipment. All raring decisions were issued by the Department of Veterans Affairs (VA) Regional Office (RO) in San Juan, Puerto Rico. 

As a matter of background, the appeal for an increased rating for psychosis came before the Board in September 2014, at which time it remanded the issue for further development, to include affording the Veteran a new VA examination. Thereafter, in December 2014, the Veteran was issued a new rating decision which granted a 100 percent rating for that disability, effective April 29, 2014, and also granted entitlement to special monthly compensation, effective that date. The Veteran proceeded to appeal that decision, requesting earlier effective dates for both grants and the RO has adjudicated both as such since that time. However, the Board notes that the June 2013 rating decision which was initially appealed to the Board in September 2014 granted an effective date of November 30, 2012, for service connection of psychosis. As such, the December 2014 rating decision does not constitute a complete grant of the benefit sought on appeal, and therefore the Board has characterized that appeal as one for an increased initial rating in excess of 70 percent for psychosis, not otherwise specified (originally described as posttraumatic stress disorder (PTSD), prior to April 29, 2014. From April 29, 2014, onward, the Veteran is receipt of a 100 percent rating for that disability, and therefore there is no issue in controversy from that date forward. 

The issues of entitlement to increased disability ratings for all service-connected disabilities not on appeal, as well as entitlement to service connection for hypertension, diabetes mellitus, neuropathy, a sleep disorder (to include obstructive sleep apnea secondary to service-connected psychiatric disability), colon polyps, and gastritis have been raised by the record in June 2015, February 2016 and May 2016 statements, but have not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over them, and they are referred to the AOJ for appropriate action. 38 C.F.R. § 19.9(b) (2015). 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2014).

FINDINGS OF FACT

1. The Veteran's bilateral eye disability is such that he has experienced permanent impairment of vision in both eyes. 

2. From November 30, 2012, the Veteran's service-connected psychosis, not otherwise specified (originally described as posttraumatic stress disorder (PTST), has resulted in total occupational and social impairment with symptoms such as hallucinations or delusions, suicidal thoughts, chronic anxiety and depression, memory loss, and intermittent inability to perform activities of daily living.

3. The minimum requirements for special monthly compensation at the housebound rate were met as of November 30, 2012; the Veteran's claim for special monthly compensation based on housebound status was received by VA on June 7, 2013.
CONCLUSIONS OF LAW

1. The criteria for entitlement to automobile and adaptive equipment or for adaptive equipment only have been met. 38 U.S.C.A. §§ 3901, 3902 (West 2014); 38 C.F.R. § 3.808 (2015).

2. The criteria for a 100 percent rating for service connected psychosis, not otherwise specified (originally described as posttraumatic stress disorder (PTST), have been met, effective November 30, 2012. 

3. The criteria for an effective date of June 7, 2013 for the award of entitlement to special monthly compensation based on housebound status are met. 38 U.S.C.A. § 1114, (West 2014); 38 C.F.R. §§ 3.350, 3.400 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Notice and Assistance

VA has a duty to notify and assist claimants in substantiating claims for VA benefits. See e.g. 38 U.S.C.A. §§ 5103, 5103A (West 2014) and 38 C.F.R. § 3.159 (2015). Given the positive outcome of this decision with regard to all claims on appeal, a discussion of the duty to notify and assist is not necessary at this time. 

II. Automotive and Adaptive Equipment

In order to establish entitlement to financial assistance in purchasing an automobile or other conveyance, or adaptive equipment, the Veteran must have a service-connected disability which includes one of the following: loss or permanent loss of use of one or both feet, loss or permanent loss of use of one or both hands, permanent impairment of vision of both eyes, a severe burn injury, or amyotrophic lateral sclerosis (ALS). 38 U.S.C.A. §§ 3901, 3902 (West 2014); 38 C.F.R. § 3.808 (2015).

For the purposes of evaluating such entitlement, permanent impairment of vision of both eyes includes central visual acuity of 20/200 or less in the better eye, with corrective glasses, or, in the alternative, central visual acuity of more than 20/200 if there is a field defect in which the peripheral field has contracted to such an extent that the widest diameter of visual field subtends an angular distance no greater than 20 degrees in the better eye. 38 C.F.R. § 3.808(b)(3). 

In the instant matter, the Veteran is service-connected for anatomical loss of the right eye with prosthesis. Therefore, the Board must consider the severity of his service-connected vison loss in the left eye, as it is, by default, the better eye. 

In January 2015, the Veteran was afforded a VA examination in connection with his claim. That examination revealed uncorrected distance vision of 20/200 and uncorrected near vision of 20/70. Corrected distance and near vision was 20/40 or better in the left eye. The Veteran did have a visual field defect, particularly contraction of the visual field, with loss of visual field. He did not have scotoma. The examiner stated that the Veteran has legal (statutory) blindness, which accounts for visual field diameter of 20 degrees or less in the better eye, even if the corrected visual acuity is 20/20, based upon visual field loss. (See VBMS, C&P Examination, 1/29/2015).

Additional evidence includes a January 2016 private optometry certificate which indicated 20/100 uncorrected visual acuity in the left eye and 20/70 corrected visual acuity in the left eye. Depth perception was deficient. Temporal peripheral vision was decreased to 20 degrees. The ophthalmologist stated that he was legally blind in the left eye. (See VBMS, Medical Treatment Record - Non-Government Facility, 1/26/2016; see also VBMS, Correspondence, 9/15/2016, p. 41 for English translation).

A September 2014 VA basic eye notation indicated suspected glaucoma but noted that optic nerve didn't explain field of vision changes. Visual field using the Goldmann test indicated constricted field of vision. Both the Goldmann test and Humphrey Model indicated visual field of approximately 10 degrees. (See VBMS, CAPRI, 10/11/14, p. 12-13).

A handwritten VA Form 21-2680 (Examination for Housebound Status or Permanent Need for Regular Aid and Attendance), completed and signed in May 2014 by a VA physician and nurse practitioner indicate corrected vision in both eyes as being 5/200. The form stated that the Veteran was legally blind and was only able to walk with the use of a blind cane and guidance. (See VBMS, VA 21-2680, 7/19/2015).

A VA examination conducted in March 2007 noted the anatomical loss of the right eye and stated that the Veteran had very severe peripheral constriction with approximately 10 degrees of central visual field remaining in the left eye. (See VBMS, VA Examination, 2/1/2007).

In light of the above, the Board finds that the Veteran's bilateral eye disability is such that he has experienced permanent impairment of vision in both eyes. Particularly, although most of the evidence of record has found him to have better than 20/200 corrected vision in the left eye, the evidence documents that he has a field defect in which the peripheral field has contracted to at least 20 degrees or less. As such, entitlement to financial assistance in the purchase of automobile and/or adaptive equipment should be granted.

III. Increased Disability Rating

Disability ratings are determined by the application of a schedule of ratings, which is based on the average impairment of earning capacity. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. § 4.1 (2015). The Veteran's entire history is reviewed when making disability evaluations. See generally, Schafrath v. Derwinski, 1 Vet. App. 589 (1991); 38 C.F.R. § 4.1. Where, as in the case of the Veteran's anxiety disorder, the question for consideration is the propriety of the initial evaluation assigned, consideration of the medical evidence since the effective date of the award of service connection and consideration of the appropriateness of staged ratings are required. See Fenderson v. West, 12 Vet. App. 119, 126 (1999). Further, "[w]here there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned." 38 C.F.R. § 4.7 (2015).

The Veteran's psychosis, not otherwise specified, is rated under 38 C.F.R. § 4.130, Diagnostic Code (DC) 9411 (2015), which provides the rating criteria for mental health disorders. The Veteran's psychiatric disorder is presently rated as 70 percent disabling from November 30, 2012, through April 29, 2014. It is the Veteran's contention that he should be awarded a higher rating for that period. (The Board recognizes that beginning on April 29, 2014, the Veteran has been granted a 100 percent disability rating for that disability, and therefore, any period after that date is not on appeal as the Veteran cannot be granted a higher rating). 

A 70 percent evaluation is warranted for occupational and social impairment, with deficiencies in most areas, such as work, school, family relationships, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); inability to establish and maintain effective relationships. Id.

Lastly, a 100 percent evaluation is warranted for total occupational and social impairment, due to such symptoms as gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent ability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. Id.

Consideration is given to the frequency, severity, and duration of psychiatric symptoms, the length of remission, and the Veteran's capacity for adjustment during periods of remission. The rating agency shall assign an evaluation based on all the evidence of record that bears on occupational and social impairment, rather than solely on the examiner's assessment of the level of disability at the moment of examination. See 38 C.F.R. § 4.126(a) (2015). Further, when evaluating the level of disability arising from a mental disorder, the rating agency will consider the extent of social impairment, but shall not assign an evaluation solely on the basis of social impairment. 38 C.F.R. § 4.126(b). It is necessary to evaluate a disability from the point of view of the Veteran working or seeking work. 38 C.F.R. § 4.2 (2015). 

In assessing the evidence of record, it is important to note that the Global Assessment of Functioning (GAF) scale is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed.1994) (DSM-IV). A GAF score of 41-50 is defined as: "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job, cannot work)." A GAF score of 51-60 is defined as : "[m]oderate symptoms (e.g., flat affect and circumlocutory speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." A GAF score of 61-70 is denied as : "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." Id. 

Effective August 4, 2014, VA amended the regulations regarding the evaluation of mental disorders by removing outdated references to DSM-IV. The amendments replace those references with references to the recently updated "DSM-5." However, as the Veteran's increased rating claim was originally certified to the Board on July 7, 2014, the DSM-IV is applicable to this case. That said, according to the DSM-5, clinicians do not typically assess GAF scores. The DSM-5 introduction states that it was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice. As the period of time in question in this appeal pre-dates the adoption of the DSM-5, the Board must continue to consider the criteria contained in the DSM-IV, but is cognizant of the fact that GAF scores may not be available for all periods on appeal. Therefore, in reviewing the evidence of record, the Board will consider any GAF scores of record. In doing so, the Board is cognizant that GAF scores are not, in and of themselves, the dispositive element in rating a disability. Rather, GAF scores must be considered in light of the actual symptoms of the Veteran's disorder, which provide the primary basis for the rating assigned. See 38 C.F.R. § 4.126(a).

The evidence of record indicates that in May 2013, the Veteran was afforded a VA examination in connection with his initial claim for service connection for PTSD. At that time, he was noted to have symptoms including depressed mood, anxiety, suspiciousness, chronic sleep impairment, and memory loss (such as forgetting names, directions or recent events). He had disturbances of motivation and mood and difficulty in adapting to stressful circumstances, including work or a work like setting. The examiner found that he persistently reexperienced various traumatic events, including recurrent and distressing recollections of the event, including images, thoughts or perceptions, and recurrent dreams. Such recollections resulted in intense psychological distress and physiological reactivity at exposure to internal or external stimuli. He engaged in avoidance behavior and exhibited markedly diminished interest or participation in significant activities. His symptoms also resulted in difficulty falling and staying asleep, irritability or outbursts of anger, difficulty concentrating, and hypervigilance. (See VBMS, VA Examination, 5/21/2013).

An April 2013 VA psychiatric progress note also indicated chronic anxiety and mood symptomatology and provided a GAF score of 55- indicating moderate symptoms. (See, e.g., VBMS, VA Examination, 5/21/2013, p. 9).

After a careful review of all of the evidence of record, the Board finds that the Veteran should be granted a total disability rating, effective November 30, 2012, the date of the grant of service connection for a psychiatric disability. 

In reaching this conclusion, the Board recognizes that the Veteran was afforded a total rating, effective April 29, 2014, based on symptoms such as total occupational and social impairment, delusions and hallucinations, difficulty adapting to stressful circumstances, near continuous depression, disturbances of motivation and mood, flattened affect, difficulty in establishing and maintaining effective work and social relationships, depressed mood, mild memory loss, chronic sleep impairment, anxiety, and impaired judgment. Although the May 2013 examination report did not explicitly address all of those symptoms, the Board finds that the evidence of record suggests they were present at the time. 

Particularly, the Board refers to an August 2007 VA examination report which found the Veteran to suffer from hallucinations, particularly, instances where his fellow soldier's faces are clear and he's convinced that he is being watched and followed, particularly by soldiers who were killed when he stepped on a mine in Korea. (See, VBMS, VA Examination, 8/31/2007). Although the May 2013 examination report did not explicitly state he suffered from hallucinations, it did record persistent reexperiencing of traumatic events during active service, including recurrent and distressing recollections of events such as the incident with the mine, including images, thoughts or perceptions, and recurrent dreams and resulting in intense psychological distress and physiological reactivity. 

Likewise, the Board finds that the May 2013 examination report clearly indicates other symptoms such as memory loss, chronic sleep impairment, chronic anxiety leading to disturbances of motivation and mood, depression, difficulty concentrating and engaging gin hypervigilance, outbursts of anger, and markedly diminished interest or participation in significant activities. All symptoms were cited by the RO in assigning the Veteran total disability rating effective in April 2014.

The Board also notes that, although the May 2013 examination report stated that the Veteran denied suicidal or homicidal ideation or plans at present, it also states that his symptoms included "death wishes since 'long time ago' almost daily severe." Although the Veteran has generally denied any suicidal attempts or intent, his medical record both before and after the period on appeal do document consistent suicidal ideation. (See, e.g., VBMS, VA Examination, 8/31/2007; Medical Treatment Records - Government Facility, 6/5/2014). Here, the May 2013 examination report is contradictory, but at least appears to confirm present evidence of suicidal thoughts. Further, there is evidence that the Veteran has been unable to work nor get involved in gainful activities since at least 2007 due to his psychiatric disability. (See VMBS, Medical Treatment Record - Government Facility, 8/10/2007, p. 5).

The Board also recognizes that an April 2013 treatment note gave a GAF score of 55, indicating moderate symptoms, but finds that record to be less than probative of the Veteran's symptoms, particularly in light of the more severe symptoms eluded to in the May 2013 examination report. 

Altogether, after carefully reviewing all evidence of record, and affording the Veteran the benefit of the doubt, the Board finds that, when viewed in relation to his medical history and continued treatment records, the May 2013 VA examination report shows that the Veteran suffers from symptoms of the same severity he has suffered since April 2014, when he was granted a total disability rating for his service-connected psychiatric disability. At the very least, there is indication that his psychiatric disability has resulted in total occupational and social impairment, due to such symptoms as impairment in thought processes; persistent delusions or hallucinations; suicidal ideation; outbursts of anger; intermittent ability to perform activities of daily living; and memory loss. As such, a 100 percent rating should be assigned from November 30, 2012, the date of service connection for a psychiatric disability. 

IV. Special Monthly Compensation

An effective date for a grant of benefits, except as otherwise provided, will be the date of the receipt of the claim, or the date entitlement arose, whichever is the later. 38 C.F.R. § 3.400 (2015). 

Special monthly compensation based on housebound status is payable where a veteran has a single service-connected disability rated 100 percent, and either (1) has additional service-connected disability or disabilities independently ratable as 60 percent, separate and distinct from the 100 percent service-connected disability and involving different anatomical segments or bodily systems; or (2) is permanently housebound by reason of service connected disability or disabilities. 38 U.S.C.A. § 1114(s) (West 2014); 38 C.F.R. § 3.350(i) (2015). 

The Veteran has been assigned special monthly compensation based on housebound status, effective April 29, 2014, the first date he met the schedular criteria for special monthly compensation, specifically, that was the date he was first awarded a 100 percent disability rating for his service-connected psychiatric disability, and also had additional disabilities rated at 60 percent or more. He argues that he should be entitled to an earlier effective date for that grant. 

In light of the above decision, the Board finds that the Veteran should be granted an earlier effective date of June 13, 2013, for the grant of special monthly compensation based on housebound status. 

Here, the Board recognizes that the Board has granted a 100 percent disability rating for his service-connected psychosis, not otherwise specified, effective November 30, 2012. Further, from November 30, 2012, through April 29, 2014, the Veteran was service connected for tinnitus at 10 percent disabling, otitis media at 10 percent disabling, left eye residuals of a shell fragment wound with conjunctivitis at 10 percent disabling, muscle damage to the abdominal wall at 10 percent disabling, left leg scars at 10 percent disabling, left arm scars at 10 percent disabling, residuals of a shell fragment wound with retained foreign body in the right hand at 10 percent disabling, residuals of a fractured right hand at 10 percent disabling, pleural injury at 20 percent disabling, residuals of a shrapnel wound to the chest wall at 20 percent disabling, post-traumatic splenectomy at 30 percent disabling, residuals of a shell fragment wound to the left thigh at 30 percent disabling, and absent right eye with acquired conjunctivitis at 40 percent disabling. Combined but excluding the service-connected psychiatric disability, this accounts for a 90 percent disability rating. Therefore, the Veteran meets the schedular criteria for a grant of special monthly compensation based on housebound status, as of November 30, 2012.

In this case, the Veteran filed a claim for service connection for a psychiatric disorder (originally characterized as PTSD) in November 30, 3012. However, that claim did not include a claim for special monthly compensation. Rather, the Veteran did not indicate a desire to file a claim for special monthly compensation based on housebound status until his Notice of Disagreement with the disability rating for his grant of service connection of a psychiatric disability, which was submitted to VA on June 7, 2013. 

Therefore, the Board grants an earlier effective date of June 7, 2013, the date of the initial claim, for the grant of special monthly compensation based on housebound status. 

ORDER

Entitlement to automobile or other conveyance and/or adaptive equipment is granted.

Entitlement to a 100 percent disability rating for service-connected psychosis, not otherwise specified (originally described as posttraumatic stress disorder (PTSD), is granted effective November 30, 2012.

Entitlement to an earlier effective date of June 7, 2013, for the grant of special monthly compensation based on housebound status is granted. 

______________________________________________
ERIC S. LEBOFF
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs