﻿Citation Nr: AXXXXXXXX
Decision Date: 03/31/20 Archive Date: 03/31/20

DOCKET NO. 190730-14336
DATE: March 31, 2020

REMANDED

Entitlement to service connection for sleep apnea syndrome is remanded. 

Entitlement to an initial evaluation in excess of 10 percent for Traumatic Brain Injury (TBI) is remanded.

REASONS FOR REMAND

The Veteran served on active duty in the U.S. Army from October 1998 to September 2005. 

The Board notes that the Veteran selected the Higher-Level Review Lane when he opted into the Appeals Modernization Act (AMA) review system by submitting a Rapid Appeals Modernization Program (RAMP) election form in October 2018. 38 C.F.R. § 19.2(d). Accordingly, the January 2019 AMA rating decision considered the evidence of record as of the date VA received the RAMP election form. In July 2019, the Veteran appealed this decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ). See 38 C.F.R. § 19.2(d). See also July 2019 Decision Review Request: Board Appeal (Notice of Disagreement) (VA Form 10182). Under direct review, no development may be undertaken; the Board considers the same record as the AOJ in rendering a decision, and there is no evidence submission or a hearing request. 

Additionally, in a July 2018 rating decision issued during the pendency of the current appeal, the RO reopened the Veteran’s previously denied claim for service connection for sleep apnea. See July 2018 Rating Decision. In light of the regulations governing the modernized review system, the Board is bound by this favorable finding. 38 C.F.R. § 19.2(d). Accordingly, the Board is addressing the merits of the service connection claim. 

1. Entitlement to service connection for sleep apnea syndrome is remanded.

The Veteran asserts entitlement to service connection for sleep apnea, stating that he initially began experiencing a sleep pathology during his active duty service, which has continued to the present. See, e.g., September 2018 Statement on Notice of Disagreement (VA Form 21-0958); May 2018 VA Sleep Apnea Disability Benefits Questionnaire (DBQ) (noting the Veteran’s report of experiencing a sleep pathology, including “frequent episodes of waking up out of his sleep,” during his active service).

Although the Veteran was provided a VA examination to determine the nature and etiology of his claimed sleep apnea during the course of the present appeal, the opinion of the examining VA clinician is inadequate to decide the claim. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007) (When VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate). In this regard, while the VA examiner noted the Veteran’s reported history of sleep symptoms, including frequent episodes of waking, since his active service, the examiner failed to address these competent lay statements. Rather, in finding against a relationship between the Veteran’s current sleep apnea and active service, the examiner based his negative opinion solely upon the absence of in-service medical records documenting complaints of “sleep disturbance.” See May 2018 VA Sleep Apnea DBQ; May 2018 VA Medical Opinion DBQ. See also Buchanan v. Nicholson, 451 F.3d 1331, 1336-37 (Fed. Cir. 2006) (holding that the absence of contemporaneous medical records does not, in and of itself, render lay testimony not credible); Cf. Dalton v. Nicholson, 21 Vet. App. 23, 39-40 (2007) (holding that a VA opinion was inadequate where the examiner did not comment on the Veteran's report of in-service injury and relied on lack of evidence in service medical records to provide a negative opinion).

Furthermore, the evidence of record raises the issue of entitlement to service connection for sleep apnea as secondary to service-connected disabilities; however, no medical opinion as to whether the Veteran’s sleep apnea was caused or aggravated by any service-connected disability has yet been provided. 

In this regard, the Board notes that VA psychiatric examinations, including in February 2017 and May 2018, have consistently identified “[c]hronic sleep impairment,” difficulty staying asleep, and waking multiple times per night as manifestations of the Veteran’s service-connected psychiatric disorder (variously diagnosed as persistent depressive disorder, unspecified trauma and related disorder, and major depressive disorder). See February 2017 VA PTSD DBQ; May 2018 VA PTSD DBQ. Significantly, these symptoms have also been attributed to the Veteran’s sleep apnea by examining VA clinicians. See, e.g., May 2018 VA Sleep Apnea DBQ (noting current sleep apnea symptoms including “[w]ak[ing] up out of his sleep at night”). 

The record additionally reflects that the Veteran’s sleep apnea has been associated with post-service weight gain/obesity. See September 2015 VA Sleep Apnea DBQ (noting that the Veteran “was discharged from the U.S. Army in 2005 for failure to maintain body weight standards” and stating that the Veteran gained approximately 60 pounds during his active service and that he gained another 60 following his discharge); September 2015 VA Medical Opinion DBQ (noting that the Veteran gained approximately 60 pounds since his separation from service and finding that the sleep apnea was more likely due to obesity / post-service weight gain than any in-service cause). In this regard, the Board notes that obesity per se is not a disease or injury for purposes of 38 U.S.C. §§ 1110 and 1131 and therefore may not be service-connected on a direct basis. See VAOPGCPREC 1-2017 (January 6, 2017). However, obesity, may be an “intermediate step” between a service-connected disability and a current disability for which service connection may be granted on a secondary basis under 38 C.F.R. § 3.310(a). See id.; see also Walsh v. Wilkie, No. 18-0495, slip op. at 4-5 (U.S. Vet. App. February 24, 2020) (precedential panel decision) (holding that obesity as an “intermediate step” in a causal chain for service connection can be established on either a causal or aggravation basis).

 

Notably, service connection for multiple orthopedic disorders, including lumbar spine degenerative disc and joint disease and residual instability and degenerative changes following left knee ACL reconstruction, has been in effect since the Veteran’s September 2005 discharge. See, e.g., January 2019 Rating Decision Codesheet. These conditions limit the Veteran’s activity level. See, e.g., January 2018 VA Back (Thoracolumbar Spine) Conditions DBQ (reflecting that the service-connected lumbar spine disability is productive of pain with “sitting, standing, and walking”); January 2018 VA Knee and Lower Leg Conditions DBQ (noting that the service-connected left knee condition causes “difficulty standing, walking, and stair climbing”). Also, VA medical records reflect that the Veteran’s service-connected psychiatric disability results in feelings of “low energy” and tiredness nearly every day. See, e.g., February 2017 VA PTSD DBQ (reflecting psychiatric manifestations including “feeling ‘tired and down’” nearly every day); February 2018 VA Pharmacotherapy Outpatient Note (noting the Veteran’s reports of “low energy”). 

Given the indication that the Veteran’s sleep apnea is related to obesity, which, in turn, may be related to deconditioning caused by service-connected disabilities, the Board finds that a remand for an addendum opinion as to secondary service connection is necessary. See Barr, 21 Vet. App. at 311; Stefl v. Nicholson, 21 Vet. App. 120, 123-24 (2007) (VA’s duty to assist includes providing an adequate examination when such an examination is indicated).

2. Entitlement to an initial evaluation in excess of 10 percent for Traumatic Brain Injury (TBI) is remanded.

With regard to the Veteran’s claim for a higher initial rating for the service-connected TBI, the Veteran asserts that the May 2018 VA TBI examination failed to adequately consider the severity of the memory deficits caused by his TBI. See, e.g., September 2018 Statement on Notice of Disagreement (VA Form 21-0958). 

In this regard, the Board notes that the May 2018 VA examination was conducted for the purpose of determining whether the Veteran had a TBI diagnosis and whether any diagnosed TBI was related to active service. See April 2018 VA Exam Scheduling Request; May 2018 VA Initial Evaluation of Residuals of Traumatic Brain Injury (I-TBI) DBQ. At that examination, the evaluating VA clinician identified “subjective symptoms of TBI” including complaints of “mild” memory loss, attention, concentration or executive functions, manifested by the Veteran’s need to “make frequent lists for simple tasks throughout the day.” See May 2018 VA I-TBI DBQ. The examiner additionally noted neurobehavioral effects including “[h]ypervigilance[,] . . . apathy, [and] poor motivation” that “do not interfere with workplace interaction or social interaction.” Id. No sleep dysfunction was identified, and the examiner did not conduct neuropsychological testing. Id. This is a critical component in rating the current severity of the Veteran’s TBI, especially considering that there is an indication that the Veteran has been diagnosed with a sleep disorder, as alluded to above. See, e.g., February 2017 VA PTSD DBQ (identifying symptoms including “chronic sleep impairment” and “insomnia”); February 2018 VA Initial Outpatient Consultation Note (reflecting an assessment of TBI “with cognitive inefficiencies likely due to sleep disturbance”); May 2018 VA PTSD DBQ (finding “sleep impairment” to be a symptom of the Veteran’s psychiatric disability); May 2018 VA Sleep Apnea DBQ (diagnosing a sleep pathology manifested by frequent episodes of the Veteran “[w]ak[ing] up out of his sleep at night with fatigue during the day”).

Additionally, in classifying the Veteran’s cognitive complaints as “mild,” the examiner failed to adequately address the evidence of record, including VA treatment records, reflecting that the Veteran experiences “Severe” forgetfulness, “Moderate” impairment of concentration, “Very Severe” difficulty making decisions, and “Severe” slowed thinking, difficulty getting organized, and difficulty finishing tasks. See, e.g., February 2018 VA TBI Second Level Evaluation. 

As such, given the above inadequacies, the Board finds that an adequate TBI examination testing all necessary components for rating purposes is needed. See 38 C.F.R. § 4.2 (stating that if the findings on an examination report do not contain sufficient detail, it is incumbent upon the rating board to return the report as inadequate for evaluation purposes); Green v. Derwinski, 1 Vet. App. 121, 124 (1991) (fulfillment of the statutory duty to assist includes the conduct of a thorough and contemporaneous medical examination, one which takes into account the records of prior treatment, so that the evaluation of the claimed disability will be a fully informed one); Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991) (where the record does not adequately reveal the current state of the claimant’s disability, a VA examination must be conducted).

The matters are REMANDED for the following action:

1. Schedule the Veteran for an examination by an appropriately qualified clinician to determine the current severity of his traumatic brain injury. If possible, the appropriate Disability Benefits Questionnaires (DBQs) should be filled out for this purpose. The claims file and a copy of this remand must be made available to the examiner for review in conjunction with the examination. 

All necessary diagnostic testing and evaluation should be performed, to include indicated neuropsychological studies, and all clinical findings reported in detail. 

The examiner should provide a full description of the disability and report all signs and symptoms necessary for evaluating the Veteran’s disability under the rating criteria. To the extent possible, the examiner should identify any symptoms and functional impairments due to traumatic brain injury, alone, and discuss the effect of the Veteran’s traumatic brain injury on any occupational functioning and activities of daily living. 38 C.F.R. § 4.124a, Diagnostic Code 8045.

In providing the requested findings, the examiner should consider and address the Veteran’s lay assertions concerning his memory deficiencies, as well as any relevant records of treatment, including specifically the February 2018 VA TBI Second Level Evaluation reflecting “Severe” forgetfulness, “Moderate” impairment of concentration, “Very Severe” difficulty making decisions, and “Severe” slowed thinking, difficulty getting organized, and difficulty finishing tasks.

2. Thereafter, send the claims file to an appropriate clinician for an addendum opinion as to the etiology of the Veteran’s sleep apnea. Additional examination is not required unless specifically requested by the examiner. The entire claims file and a copy of this REMAND must be made available to the examiner prior to the examination. The examiner must note in the examination report that the evidence in the claims file has been reviewed. 

After reviewing the Veteran’s full history by conducting a complete review of the claims file (including all available private and VA medical treatment records and lay statements), the examiner should provide an opinion as to whether it is at least as likely as not (50 percent or greater probability) that sleep apnea had its clinical onset during active service or is related to any in-service disease, event, or injury.

For the purpose of rendering this opinion, the examiner(s) should accept as true the Veteran’s lay statements concerning the in-service origin of his sleep problems and that he has had continuing sleep symptoms since that time.

Additionally, if a direct relationship to service is not found, the examiner should also provide an opinion as to whether it is at least as likely as not (50 percent or greater probability) that his sleep apnea was either (i) caused by, or (ii) aggravated by (worsened beyond the condition’s natural progression) a service-connected disability or disabilities (including specifically his psychiatric disability—now classified as persistent depressive disorder (dysthymia) with unspecified trauma and related disorder; his migraine headaches; his TBI; his lumbar spine degenerative disc and joint disease; his left knee instability; and/or his left knee degenerative changes).

Further, if the examiner determines that the sleep apnea was NOT caused or aggravated by any service-connected disability, the examiner should also provide an opinion as to:

(i) whether it is at least as likely as not (50 percent or greater probability) that any service-connected disability, either alone or in combination with another service-connected disability or disabilities, caused the Veteran to gain weight or become obese; and, if so,

(ii) whether it is at least as likely as not (50 percent or greater probability) that the weight gain or obesity resulting from the service-connected disability or disabilities was a substantial factor in causing sleep apnea; and, if so,

(iii) whether it is at least as likely as not (50 percent or greater probability) that sleep apnea would have occurred but for weight gain or obesity caused by the service-connected disability or disabilities. See VAOPGCPREC 1 2017 (January 6, 2017).

Finally, if negative opinions are provided as to the above inquiries, the examiner should also provide an opinion as to:

(i) whether it is at least as likely as not (50 percent or greater probability) that any service-connected disability, either alone or in combination with another service-connected disability or disabilities, aggravated (meaning worsened beyond the condition's natural progression) the Veteran’s obesity/weight gain; and, if so

(ii) whether it is at least as likely as not (50 percent or greater probability) that the aggravation of obesity/weight gain as a result of service-connected disability or disabilities was a substantial factor in causing sleep apnea; and, if so, 

(iii) whether it is at least as likely as not (50 percent or greater probability) that the sleep apnea would have occurred but for obesity/weight gain aggravated by the service-connected disability or disabilities. See Walsh v. Wilkie, No. 18-0495, slip op. at 4-5 (U.S. Vet. App. February 24, 2020) (precedential panel decision) (holding that obesity as an “intermediate step” in a causal chain for service connection can be established on either a causal or aggravation basis).

The examiner must provide a comprehensive report including complete rationales for all opinions and conclusions reached, citing the objective medical findings leading to the conclusions. In this regard, the Board emphasizes that the Veteran is competent to report his symptoms and history, and such statements by the Veteran regarding symptomatology and medical history must be specifically acknowledged and considered in formulating any opinions concerning the onset and severity of his disability. If such reports are rejected by the examiner, a reason for doing so must be provided.

The term “at least as likely as not” does not mean “within the realm of medical possibility.” Rather, it means that the weight of medical evidence both for and against a conclusion is so evenly divided that it is as medically sound to find in favor it as it is to find against it.

 

 

JENNIFER HWA

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board L. McCabe, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.