Citation Nr: 1722256 
Decision Date: 06/15/17 Archive Date: 06/29/17

DOCKET NO. 11-17 178 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to an initial disability rating in excess of 10 percent for residuals, left wrist fracture. 

2. Entitlement to a compensable initial disability rating for residuals, right thumb fracture. 

3. Entitlement to an initial disability rating for left posterior thigh lipoma, rated as noncompensable prior to March 20, 2011, and as 10 percent disabling thereafter. 


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

Robert J. Burriesci, Counsel

INTRODUCTION

The Veteran served on active duty from June 1981 to May 2003. 

This case comes before the Board of Veterans' Appeals (Board) on appeal from a January 2009 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida. 

In a June 2011 VA Form 9, the Veteran requested a hearing before the Board. In March 2013, the claim was remanded by the Board in order to provide a hearing. However, the Veteran confirmed in March 2013 that he did not want a hearing before the Board. Therefore, his request for a hearing is considered withdrawn. 

The claim was remanded in November 2014 and March 2016 for further appellate action. 

In a June 2015 rating decision, an evaluation of 10 percent, effective March 10, 2011, was granted for left thigh lipoma. Despite this grant, a claimant is presumed to be seeking the maximum benefit allowed by law and regulation, and a claim remains in controversy where less than the maximum available benefit is awarded. AB v. Brown, 6 Vet. App. 35 (1993). Therefore, the claim for a higher initial rating remains before the Board. 

In a January 2017 rating decision, the RO granted entitlement to a TDIU, effective February 14, 2015, the date the Veteran reported that he became unemployed. As this represents a complete grant of the benefit sought on appeal, the issue is no longer on appeal before the Board. See generally Grantham v. Brown, 114 F.3d 116 (Fed. Cir. 1997); Barrera v. Gober, 122 F.3d 1030 (Fed. Cir. 1997).


FINDINGS OF FACT

1. At no point during the period on appeal did the Veteran's residuals of a left wrist fracture manifest symptoms of ankylosis.

2. At no point during the period on appeal did the Veteran's residuals of a fracture of the right thumb manifest any gap between the thumb pad and opposing fingers or any ankylosis.

3. During the period prior to March 10, 2011, the Veteran's left posterior thigh lipoma manifested pain. 

4. At no point during the period on appeal did the Veteran's left posterior thigh lipoma manifest symptoms of being deep and nonlinear, or covering an area of at least 12 square inches (77 square centimeters), or any functional impairment.


CONCLUSIONS OF LAW

1. The criteria for an initial rating in excess of 10 percent for residuals of the Veteran's left wrist injury have not been met. 38 U.S.C.A. §§ 1155, 5107(b) (West 2015); 38 C.F.R. §§ 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5214, 5215 (2016).

2. The criteria for a compensable initial disability for residuals of a fracture of the right thumb have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.1, 4.2, 4.7, 4.40, 4.45, 4.71a, Diagnostic Codes 5224, 5228 (2016).

3. The criteria for an initial rating of 10 percent, and no higher, for left posterior thigh lipoma have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 4.1-4.14, 4.118, Diagnostic Code 7804 (2008, 2016). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist

With respect to the Veteran's claim herein, VA has met all statutory and regulatory notice and duty to assist provisions. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326; see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015). The Board is satisfied that there has been substantial compliance with the November 2014 and March 2016 remand directives and the Board may proceed with review. Stegall v. West, 11 Vet. App. 268 (1998). 

II. Higher Evaluation

Disability evaluations are determined by the application of a schedule of ratings which is based on average impairment of earning capacity. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. Separate diagnostic codes identify the various disabilities. Disabilities must be reviewed in relation to their history. 38 C.F.R. § 4.1. Other applicable, general policy considerations are: interpreting reports of examination in light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability, 38 C.F.R. § 4.2; resolving any reasonable doubt regarding the degree of disability in favor of the claimant, 38 C.F.R. § 4.3; where there is a question as to which of two evaluations apply, assigning a higher of the two where the disability picture more nearly approximates the criteria for the next higher rating, 38 C.F.R. § 4.7; and, evaluating functional impairment on the basis of lack of usefulness, and the effects of the disabilities upon the person's ordinary activity, 38 C.F.R. § 4.10. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991).

Where entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Staged ratings are appropriate in any increased-rating claim in which distinct time periods with different ratable symptoms can be identified. Hart v. Mansfield, 21 Vet. App. 505 (2007); Fenderson v. West, 12 Vet. App. 119 (1999). 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107 (b); 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

A. Residuals of Left Wrist Fracture

The Veteran's service-connected residuals of a left wrist fracture are currently evaluated as 10 percent disabling under Diagnostic Code 5215-5024. Hyphenated diagnostic codes are used when a rating under one diagnostic code requires use of an additional diagnostic code to identify the basis for the evaluation assigned. 38 C.F.R. § 4.27. In this case, Diagnostic Code 5024 is used to identify tenosynovitis, which is rated on limitation of motion of the affected part. The assignment of Diagnostic Code 5215 shows that the Veteran's service-connected residuals of fracture of the left wrist is rated as analogous to limitation of motion of the wrist. 

A distinction is made between major (dominant) and minor musculoskeletal groups for rating upper extremities. 38 C.F.R. § 4.69. A December 2008 VA examination report reveals that the Veteran is left hand dominant. As the Veteran is currently receiving the maximum rating available under Diagnostic Code 5215, the Board will consider whether an increased rating is available under other diagnostic codes used to rate a wrist disability. 

The only other diagnostic code that evaluates a wrist disability is Diagnostic Code 5214; which evaluates impairment from ankylosis of the wrist. Under this code, a 30 percent rating is warranted when there is favorable ankylosis in 20 degrees to 30 degrees dorsiflexion. 38 C.F.R. § 4.71a, Diagnostic Code 5214. A 40 percent rating is warranted for ankylosis in any other position, except favorable. Id. A 50 percent rating is warranted for unfavorable ankylosis in any degree of palmar flexion, or with ulnar or radial deviation. Id.

The Veteran was afforded a VA examination in December 2008. The Veteran stated that he is left handed. Inspection of the left wrist showed no tenderness or instability. The range of movement of the left wrist on dorsiflexion was from 0 to 60 degrees and on palmar flexion was from 0 to 70 degrees. On ulnar deviation it was from 0 to 40 degrees and on radial deviation it was from 0 to 20 degrees. There was no pain. There was no additional range of motion lost due to pain, fatigue, weakness or lack of endurance and coordination following repetitive use.

The impression of a December 2008 VA x-ray was no acute bone or soft tissue abnormality.

The Veteran was afforded a VA examination in January 2011. The Veteran reported that he had pain in the left wrist with overuse like typing. Physical examination revealed no inflammatory arthritis. The Veteran had no tenderness or instability in the left wrist. Left dorsiflexion was 0 to 60 degrees, left palmar flexion was 0 to 70 degrees, left radial deviation was 0 to 15 degrees, and left ulnar deviation was 0 to 35 degrees. There was no objective evidence of pain following repetitive motive. There was no additional limitation following three repetitions of range of motion. The examiner noted that it was not likely that the left wrist, right thumb and left thigh lipoma would prevent him from maintaining employment in sedentary or non-sedentary work. 

In a treatment record dated in February 2012 the Veteran was noted to not have any abnormalities of the wrists.

The Veteran was afforded a VA wrist examination in June 2015. Functional loss or impairment was noted to be pain and range of motion worse with using the hand, bending wrist. Range of motion of the left wrist was palmar flexion to 60 degrees, dorsiflexion to 50 degrees, ulnar deviation to 35 degrees, and radial deviation to 15 degrees. The range of motion did not contribute to functional loss. Pain was noted on examination and caused functional loss. The Veteran occasionally used a brace. The Veteran's wrist disability impacted his ability to perform occupational tasks due to pain being worse with using hand and lifting. 

In March 2016 wrist flexion was 5/5 and wrist extension was 5/5. Wrist dorsiflexion, palmar flexion, ulnar deviation, and radial deviation was normal.

In November 2016 the Veteran was afforded a VA wrist examination. The Veteran had functional limitation of limited repetitive use and weight bearing. Range of motion was measured as palmar flexion to 55 degrees, dorsiflexion to 45 degrees, ulnar deviation to 35 degrees, and radial deviation to 15 degrees. The range of motion itself did not contribute to a functional loss. The Veteran had pain in all ranges of motion. There was additional loss of function or range of motion after three repetitions due to fatigue. Range of motion after repetitive use was measured as palmar flexion to 50 degrees, dorsiflexion to 40 degrees, ulnar deviation to 30 degrees, and radial deviation to 15 degrees. Fatigue was noted to significantly limit functional ability with repeated use over a period of time. Muscle strength of the left wrist was 5/5 for flexion rate and extension rate. There was no reduction of muscle strength or muscle atrophy. There was no ankylosis.

Entitlement to an evaluation in excess of 10 percent disabling for residuals of a left wrist fracture is not warranted. The Veteran is already in receipt of the highest schedular rating available for limitation of motion of the left wrist and, at no time during the period on appeal did the Veteran's left wrist manifest ankylosis. As demonstrated in the examination findings, the Veteran has diminished range of motion, but there is no ankylosis. Thus, entitlement to an evaluation in excess of 10 percent disabling for residuals of a left wrist fracture is denied.

B. Residuals of Right Thumb Fracture

The Veteran's service-connected residuals of a right thumb fracture are currently evaluated as 10 percent disabling under Diagnostic Code 5228. 

Pursuant to Diagnostic Code 5224, as to both the dominant and non-dominant hand, favorable ankylosis of the thumb is rated as 10 percent disabling, and unfavorable ankylosis of the thumb is rated as 20 percent disabling; a schedular rating of higher than 20 percent is not available. A Note also advises that consideration should be given to whether evaluation as amputation is warranted and whether an additional evaluation is warranted for resulting limitation of motion of other digits or interference with overall function of the hand. 38 C.F.R. §4.71a, Diagnostic Code 5224.

Pursuant to Diagnostic Code 5228, as to both the dominant and non-dominant hand, for limitation of motion of the thumb, where there is a gap of one to two inches between the thumb pad and the fingers, with the thumb attempting to oppose the fingers, a 10 percent disability rating is assigned. Where that gap is more than two inches, a maximum 20 percent disability rating is assigned. 38 C.F.R. § 4.71a, Diagnostic Code 5228.

The Veteran was afforded a VA examination in December 2008. The Veteran complains of occasional mild ache or pain in his right thumb about once a month. There were no flare-ups and he took no medication. He did not use any brace or assistive device for the right thumb. There was no effect on occupation or activities of daily living except for pain. There was no history of surgery. Inspection of the right thumb showed no tenderness or deformity. He could make a good fist and grasp with both hands. He could oppose the fingers with the thumb in both hands. 

The Veteran was afforded a VA examination in January 2011. The Veteran stated that his right thumb hurts with overuse no flare-ups he takes the same above medicine for it as needed. He stated that the condition was about the same or stable. He did not use any assistive devices. On inspection of the right thumb the Veteran complained of mild tenderness on deep palpation on the proximal end of the right thumb no instability, swelling, deformity, or other abnormalities noted. The Veteran made a good fist and grasp was equal in both hands. He could oppose the fingers with the thumb in the right hand. There were no movement abnormalities noted in the right thumb.

In a February 2012 treatment note the Veteran was noted to have no hand or abnormalities. 

The Veteran was afforded a VA hand and finger examination in June 2015. The Veteran reported functional loss of pain worse with using his hand. Range of motion of the thumb was abnormal. Maximum extension of the metacarpophalangeal (MCP) joint was to 0 degrees and maximum flexion was to 80 degrees. There was no gap between the pad of the thumb and the fingers. The range of motion itself did not contribute to functional loss. Pain caused functional loss. There was no evidence of pain with use of the hand. There was no objective evidence of localized tenderness or pain on palpation of the joint or associated soft tissue. The Veteran was able to perform repetitive use testing with at least three repetitions. There was no additional functional loss or range of motion after three repetitions. The examiner noted that the Veteran's ability to perform an occupational task would be impacted by pain being worse with using the hand. 

In March 2016 the Veteran was noted to have normal appearing hands. Hand grasp was 5/5. There was no obvious swelling or gross abnormalities of the MCP, proximal interphalangeal (PIP), or distal interphalangeal (DIP) joints. Thumb range of motion was normal.

In November 2016 the Veteran was afforded a VA hand and fingers examination. He stated his right thumb felt sore and weak when he held something. Over time the Veteran had pain and weakness with use. Range of motion of the right thumb was maximum extension to 0 degrees for the MCP and interphalangeal (IP) and maximum flexion to 70 degrees MCP and 60 degrees IP. There was no gap between the pad of the thumb and the fingers. The range of motion did not itself contribute to functional loss. There was evidence of pain with use of the hand. There was mild tenderness at the base of the thumb. The Veteran was able to perform repetitive use testing and there was no additional functional loss or range of motion after three repetitions. Under additional factors contributing to disability of the right hand it was noted less movement than normal due to ankylosis, adhesions, etc. Muscle strength testing was 5/5 for right hand grip. There was no muscle atrophy. There was no ankylosis of the right thumb. Diagnostic testing revealed some mild deformity of the right first metatarsal possibly related to previous fracture. The Veteran's thumb would impact occupational ability by limiting repetitive use of the right thumb.

In January 2017 the Veteran was noted to complain of severe bilateral hand pain.

Entitlement to a compensable evaluation for residuals of a fracture of the right thumb is not warranted. At no point during the period on appeal did the Veteran's residuals of a right thumb fracture manifest any gap between the thumb pad and opposing finger or any ankylosis. VA examinations in January 2011, June 2015 and November 2016 specifically noted no gap. Therefore, entitlement to a compensable evaluation for residuals of a fracture of the right thumb is denied.

C. Left Posterior Thigh Lipoma

The Veteran's service-connected left posterior thigh lipoma is evaluated as noncompensably disabling from the August 8, 2008 effective date of the grant of service connection to March 10, 2011, and 10 percent thereafter. In the rating action on appeal, the RO evaluated the claim under Diagnostic Code 7899-7805, as analogous to a scar. The RO specifically noted that the service-connected disability was on the back of the leg. In a June 2015 rating decision, the RO increased the rating to 10 percent, effective March 10, 2011, under Diagnostic Code 7805-7804. 

The regulations pertaining to rating skin disabilities were revised effective October 23, 2008. The regulatory changes apply to applications received by VA on or after October 23, 2008, or if the Veteran request review under the revised rating criteria. The Veteran's claim for benefits was received by VA prior to that date. The Board has an independent obligation to consider all "potentially applicable" provisions of law and regulation and to apply the diagnostic criteria in a manner that maximizes benefits. Schafrath v. Derwinski, 1 Vet. App. 589 (1991); Bradley v. Peake, 22 Vet. App. 280 (2008). Thus, the Board has considered both the pre- and post- October 23, 2008, criteria. 

From August 30, 2002, to prior to October 23, 2008, scars other than the head, face, and neck that are deep or cause limitation of motion, and are at least 12 square inches (77 square centimeters), warrant a 20 percent rating. 38 C.F.R. § 4.118, Diagnostic Code 7801 (2008).

Since October 23, 2008, scars not of the head, face, or neck, that are deep and nonlinear, and are at least 12 square inches (77 square centimeters) but less than 72 square inches (465 square centimeters), warrant a 20 percent rating. 38 C.F.R. § 4.118, Diagnostic Code 7801 (2016).

From August 30, 2002, to prior to October 23, 2008, scars other than the head, face, and neck that are superficial and do not cause limited motion, covering an area of 144 square inches or more, warrant a 10 percent rating. 38 C.F.R. § 4.118, Diagnostic Code 7802 (2008).

Since October 23, 2008, scars other than the head, face, and neck that are superficial and nonlinear, covering an area of 144 square inches or more, warrant a 10 percent rating. 38 C.F.R. § 4.118, Diagnostic Code 7802 (2016).

From August 30, 2002, to prior to October 23, 2008, scars that are superficial and unstable warrant a 10 percent rating. 38 C.F.R. § 4.118, Diagnostic Code 7803 (2008).

Under the criteria in effect since August 30, 2002, and prior to October 23, 2008, Diagnostic Code 7804 provides for a 10 percent rating for superficial scars that are painful on examination. 38 C.F.R. § 4.118, Diagnostic Code 7804 (2008). 

Under the criteria in effect since October 23, 2008, Diagnostic Code 7804 provides a 10 percent rating for one or two scars that are unstable or painful. 38 C.F.R. § 4.118, Diagnostic Code 7804 (2016). If one or more scars are both unstable and painful, 10 percent rating will be added to the evaluation that is based on the total number of unstable or painful scars. See Note (2). 

Under the criteria in effect since August 30, 2002, prior to October 23, 2008, Diagnostic Code 7805 provides for scars, other, to be rated based upon limitation of function of the affected part. 38 C.F.R. § 4.118, Diagnostic Code 7805 (2008).

Under the criteria in effect since October 23, 2008, Diagnostic Code 7805 provides for other scars to be evaluated by any disabling effects not considered in a rating provided under codes 7800-04 under an appropriate diagnostic code. 38 C.F.R. §4.118, Diagnostic Code 7805 (2016).

The Veteran was afforded a VA examination in December 2008. The Veteran reported that he had been offered to have the lump on the back of his left thigh removed, but he declined. He reported that he gets an ache or pain in that lump with longer standing from time to time. It was not constant and it was not severe. He did not take any medication for it and he had not noticed any new changes in it. The examiner noted that the Veteran was diagnosed with having a lipoma or a fatty tumor. Inspection of the left thigh showed no scar. He had a soft, movable lump measuring about 2 to 3 centimeters (cm) and it was located on the posterior aspect of the left thigh, midway. It was not attached to underlying tissue. It was nontender. There was no redness or fluctuation. It felt like a fatty lump. 

The Veteran was afforded a VA examination in January 2011. The Veteran reported that he had the lipoma on the back of his left thigh and that at one time the lipoma grew in size but that it had been stable recently with no increase in size. He said it hurt sometimes with long standing and that he took Tylenol as needed. Inspection showed a soft lipoma-like lesion measuring 3 by 2 cm on the back of the thigh. There was no tenderness or other abnormalities noted. It felt like a soft lipoma.

In a February 2011 surgery consult the Veteran was noted to have a symptomatic painful mass left lateral lower thigh most probably an epidermal cyst measuring 2 to 3 cm in diameter movable and tender. In March 2011 the Veteran underwent excision of a left lateral thigh mass. 

The Veteran was afforded a VA skin examination in June 2015. The Veteran was diagnosed with a lipoma. Medical history noted that the Veteran had a symptomatic painful mass of the left lateral lower thigh most probably an epidermal cyst measuring 2 to 3 cm in diameter movable and tender. There was no evidence of infection. The mass was removed in March 2011. The Veteran had an additional lipoma middle posterior thigh that has not been removed that measured 3 to 4 cm. As a residual of the surgical removal of the mass the Veteran still had the lipoma midline medial posterior thigh 2 to 3 cm. It cannot be removed and was tender. The examiner noted that this disability did not impact his ability to work.

The Veteran was afforded a VA scar examination in June 2015. The Veteran was noted to have a scar on the left thigh. The scar was noted to be tender. The scar was not unstable with frequent loss of covering of skin. The scar was 3 cm in length. The examiner noted that the scar would have no impact on the Veteran's ability to work.

When the Board reviewed the claim in March 2016, it noted that the Veteran had both a lipoma (which is service-connected) and a cyst on the left thigh, but it was unclear whether the cyst was also related to service. The Board ordered an examination to determine which thigh lipoma was the subject of the initial grant of service connection in January 2009 and whether the growth recently removed should be service connected. 

In November 2016 the Veteran was afforded a VA skin examination. The Veteran was noted to be diagnosed with a lipoma and epidermal cyst. The Veteran reported that his knee felt loose and unstable since having the lipoma removed. The Veteran had not been treated with oral or topical medications in the prior 12 months for any skin condition. The Veteran was noted to have had removal of an epidermal cyst of the left lateral lower thigh in March 2011. There were no residuals or complications. There was a left posterior thigh lipoma present. The Veteran reported that it was painful when he walked. The lesion measured 3.5 by 2.5 cm, was mobile and soft, in subcutaneous tissue. The Veteran's skin condition was noted to impact his ability to work because the Veteran stated that his left leg hurt when he walked.

In November 2016 the Veteran was afforded a scar examination. The Veteran was noted to have a scar status post March 2011. The scar on the left lateral lower thigh was noted to be tender. The scar was not unstable with frequent loss of covering of skin. The scar was 2.5 cm and linear. 

In a November 2016 medical opinion it was reported that the Veteran's left lower lateral thigh lipoma was unrelated to service and to the Veteran's left posterior thigh. The examiner noted that the left lower lateral thigh lipoma was not caused by or aggravated by the Veteran's posterior lipoma.

Entitlement to an evaluation of 10 percent disabling, and no higher, for the entire period on appeal is warranted for the Veteran's service-connected left posterior thigh lipoma.

Initially, the Board notes that examination of the Veteran has revealed that the Veteran has multiple skin disabilities of the left thigh. However, the disability for which the Veteran is currently in receipt of service connected benefits is the left posterior thigh lipoma. Service connected benefits have not been granted for the Veteran's left lateral thigh mass and associated post-surgical scar. As such, only symptomatology associated the Veteran's left posterior thigh lipoma is for consideration.

Upon examination in December 2008 and January 2011 the Veteran was noted to have a left posterior thigh lipoma that was 2 to 3 cm. and 3 by 2 cm., respectively, and that there was no tenderness. However, at the VA examination in December 2008 the Veteran competently and credibly reported that he had an ache or pain in the lump on the back of his left thigh when he stood. In January 2011, the Veteran again competently and credibly reported that the lipoma on the back of the left thigh hurt sometimes with long standing. As such, affording the Veteran the benefit of the doubt, an evaluation of 10 percent disabling is granted for the Veteran's service-connected left posterior thigh lipoma for the period prior to March 10, 2011.

At no point during the period on appeal did the Veteran's service-connected left posterior thigh lipoma manifest symptoms of being deep and nonlinear, or covering an area of at least 12 square inches (77 square centimeters), or any functional impairment. Although the November 2016 examination included the Veteran's report that his knee felt unstable since having the lipoma removed, the Board points out that he did not have the service-connected left posterior thigh lipoma removed; rather he had the nonservice-connected cyst removed. There is no indication of any functional impairment related to the service-connected left posterior thigh lipoma. Therefore, an evaluation in excess of 10 percent disabling for left posterior thigh lipoma is denied.

III. Additional Considerations

As noted above, in January 2017 the RO granted entitlement to TDIU, effective February 14, 2015, the day after the last day of the Veteran's employment. Review of the rating decision reveals that the award of TDIU was based upon the impairment rendered by the Veteran's service-connected disabilities. As such, there is no single disability rated at 100 percent disabling with additional disabilities rated at a combined 60 percent to warrant an award of Special Monthly Compensation. See Buie v. Shinseki, 24 Vet. App. 242 (2011); Bradley, 22 Vet. App. at 280. 

Neither the Veteran nor his representative has raised any other issues, nor have any other issues been reasonably raised by the record. See Doucette v. Shulkin, 28 Vet. App. 366 (2017) (confirming that the Board is not required to address issues unless they are specifically raised by the claimant or reasonably raised by the evidence of record).


ORDER

Entitlement to an initial disability rating in excess of 10 percent for residuals, left wrist fracture, is denied.

Entitlement to an initial compensable disability rating for residuals, right thumb fracture, is denied.

Entitlement to an initial disability rating for left thigh lipoma with scar, of 10 percent, and no higher, is granted, subject to regulations governing payment of monetary awards.




____________________________________________
M. E. LARKIN
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs