﻿Citation Nr: AXXXXXXXX
Decision Date: 02/27/20 Archive Date: 02/27/20

DOCKET NO. 190626-10635
DATE: February 27, 2020

ORDER

Entitlement to a rating in excess of 10 percent for right knee patellofemoral syndrome with degenerative changes is denied.

Entitlement to a rating in excess of 10 percent for left knee patellofemoral syndrome with degenerative changes is denied.

A separate 20 percent rating for a right knee meniscus tear is granted, as of August 18, 2018, subject to the law and regulations governing the payment of monetary benefits. 

Entitlement to a temporary total rating based on surgical or other treatment necessitating convalescence following right knee surgery, from September 20, 2018, to December 20, 2018, is granted, subject to the law and regulations governing the payment of monetary benefits.

Entitlement to a temporary total rating based on surgical or other treatment necessitating convalescence following right knee surgery, from February 7, 2019, to May 7, 2019, is granted, subject to the law and regulations governing the payment of monetary benefits.

REMANDED

Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU) is remanded.

FINDINGS OF FACT

1. Throughout the course of the appeal, the Veteran's right knee does not exhibit signs of ankylosis, subluxation, or instability, but has always exhibited painful motion.

2. Throughout the course of the appeal, the Veteran's left knee does not exhibit signs of ankylosis, subluxation, or instability, but has always exhibited painful motion.

3. As of August 18, 2018, the Veteran’s service-connected right knee developed a meniscus tear which has been manifested by frequent episodes of joint “locking,” pain, and effusion.

4. The Veteran required treatment and a period of convalescence due to service-connected right knee surgery on September 20, 2018.

5. The Veteran required treatment and a period of convalescence due to service-connected right knee surgery on February 7, 2019.

CONCLUSIONS OF LAW

1. The criteria for entitlement to a rating in excess of 10 percent for right knee patellofemoral syndrome with degenerative changes have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.3, 4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5010-5260.

2. The criteria for entitlement to a rating in excess of 10 percent for left knee patellofemoral syndrome with degenerative changes have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.3, 4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5010-5260.

3. The criteria for a separate 20 percent, but not greater, rating for a right knee meniscus tear consistent with frequent episodes of joint “locking,” pain, and effusion have been met as of August 18, 2018. 38 U.S.C. §§ 1155, 5107(b); 38 C.F.R. §§ 3.102, 4.71a, Diagnostic Code 5258.

4. The criteria for a total temporary rating for a service-connected disability, from September 20, 2018, to December 20, 2018, have been met. 38 U.S.C. § 1155; 38 C.F.R. §§ 4.29, 4.30.

5. The criteria for a total temporary rating for a service-connected disability, from February 7, 2019, to May 7, 2019, have been met. 38 U.S.C. § 1155; 38 C.F.R. §§ 4.29, 4.30.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from June 1999 to November 2006.

The rating decision on appeal was issued in May 2019. In June 2019, the Veteran elected the modernized review system. 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 19.2(d)). 

The Veteran elected the Direct Review lane. Accordingly, the Board will consider evidence of record as of the May 2019 rating decision.

Increased Rating

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities, found in 38 C.F.R. Part 4. The percentage ratings are based on the average impairment of earning capacity as a result of a service-connected disability, and separate diagnostic codes identify the various disabilities and the criteria for specific ratings. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. 

Disability ratings are determined by evaluating the extent to which a veteran's service-connected disability adversely affects his ability to function under the ordinary conditions of daily life, including employment, by comparing the symptomatology with the criteria set forth in the Schedule for Rating Disabilities (Rating Schedule). 38 U.S.C. § 1155; 38 C.F.R. §§ 4.1, 4.2, 4.10. The percentage ratings in the Rating Schedule represent the average impairment in earning capacity resulting from service-connected diseases and injuries and their residual conditions in civilian occupations. The percentage ratings are generally adequate to compensate for considerable loss of working time from exacerbation or illness proportionate to the severity of the disability.

In disability rating cases, VA assesses the level of disability from the initial grant of service connection or a year prior to the date of application for an increased rating and determines whether the level of disability warrants the assignment of different disability ratings at different times over the course of the claim, a practice that is known as "staged ratings." Fenderson v. West, 12 Vet. App. 119, 126 (1999); Hart v. Mansfield, 21 Vet. App. 505, 509-10 (2007) (holding that staged ratings may be warranted in increased rating claims).

In determining the appropriate rating for musculoskeletal disabilities, particular attention is focused on functional loss of use of the affected part. Factors of joint disability include increased or limited motion, weakened movement, excess fatigability, incoordination, and painful movement, including during flare-ups and after repeated use. DeLuca v. Brown, 8 Vet. App. 202, 206-08 (1995); 38 C.F.R. § 4.45. A finding of functional loss due to pain must be supported by adequate pathology and evidenced by the visible behavior of the claimant. 38 C.F.R. § 4.40. 

Additionally, "pain itself does not rise to the level of functional loss as contemplated by the VA regulations applicable to the musculoskeletal system." Mitchell v. Shinseki, 25 Vet. App. 32, 38 (2011). Pain in a particular joint may result in functional loss, but only if it limits the ability to perform the normal working movements of the body with normal excursion, strength, speed, coordination, or endurance. Id.; 38 C.F.R. § 4.40. Under 38 C.F.R. § 4.59, painful joints are entitled to at least the minimum compensable rating for the joint. In this case, at least the minimum compensable ratings have been in effect during the entire appeal period. 

Nonetheless, even when the background factors listed in § 4.40 or 4.45 are relevant when evaluating a disability, the rating is assigned based on the extent to which motion is limited, pursuant to 38 C.F.R. § 4.71a; a separate or higher rating under § 4.40 or 4.45 itself is not appropriate. Thompson v. McDonald, 815 F.3d 781, 785 (Fed. Cir. 2016) ("[I]t is clear that the guidance of § 4.40 is intended to be used in understanding the nature of the veteran's disability, after which a rating is determined based on the § 4.71a criteria.").

VA has a duty to consider all regulations that are potentially applicable through the assertions and issues raised in the record, and to explain the reasons and bases for its conclusions. Schafrath v. Derwinski, 1 Vet. App. 589 (1991). Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. The Board will consider whether separate ratings may be assigned for separate periods of time based on facts found, a practice known as "staged ratings." Hart v. Mansfield, 21 Vet. App. 505 (2007).

Under 38 C.F.R. § 4.71a, Diagnostic Code 5010 provides that arthritis due to trauma that is substantiated by X-ray findings is to be rated as degenerative arthritis. Diagnostic Code 5003 provides that degenerative arthritis that is established by X-ray findings will be rated on the basis of limitation of motion under the appropriate diagnostic codes for the specific joint or joints involved. When there is some limitation of motion of the specific joint or joints involved that is noncompensable (0 percent) under the appropriate diagnostic codes, Diagnostic Code 5003 provides a rating of 10 percent for each such major joint or group of minor joints affected by limitation of motion, to be combined, not added under Diagnostic Code 5003. Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. The average normal range of motion of the knee is flexion from 0 to 140 degrees and extension from 140 to 0 degrees. 38 C.F.R. § 4.71.

Disabilities of the knee are rated under DC 5256 through DC 5263 of 38 C.F.R. § 4.71a. A knee disorder can receive separate ratings, based on symptoms that are related to arthritis, stability, flexion, and extension. Where a Veteran has degenerative joint disease, which is evaluated under Diagnostic Code 5003, a separate, compensable evaluation may be assigned under Diagnostic Code 5257 or 5258 if there are concomitant symptoms, such as knee instability or subluxation. See VAOPGCPREC 23-97. 

When a Veteran has a knee disability evaluated under Diagnostic Code 5257, to warrant a separate rating for arthritis based on X-ray findings, the limitation of motion need not be compensable under Diagnostic Code 5260 or Diagnostic Code 5261; rather, such limited motion must at least meet the criteria for a zero-percent rating. See VAOPGCPREC 9-98.

Diagnostic Code 5256 provides ratings for ankylosis of the knee. Favorable angle in full extension, or in slight flexion between 0 degrees and 10 degrees is rated 30 percent disabling; in flexion between 10 degrees and 20 degrees is rated 40 percent disabling; in flexion between 20 degrees and 45 degrees is rated 50 percent disabling; and extremely unfavorable, in flexion at an angle of 45 degrees or more is rated 60 percent disabling. 38 C.F.R. § 4.71a.

Diagnostic Code 5257 provides ratings for other impairment of the knee that includes recurrent subluxation or lateral instability. Slight recurrent subluxation or lateral instability of the knee is rated 10 percent disabling; moderate recurrent subluxation or lateral instability of the knee is rated 20 percent disabling; and severe recurrent subluxation or lateral instability of the knee is rated 30 percent disabling. 38 C.F.R. § 4.71a.

Diagnostic Code 5258 provides a 20 percent disability rating for cartilage, semilunar, dislocated, with frequent episodes of "locking," pain, and effusion into the joint. 38 C.F.R. § 4.71a.

Diagnostic Code 5259 provides a 10 percent rating for symptomatic residuals of removal of a semilunar cartilage. Ratings under DC 5259 require consideration of 38 C.F.R. §§ 4.40 and 4.45 because removal of a semilunar cartilage may result in complications producing loss of motion. VAOGCPREC 9-98.

Diagnostic Code 5260 provides ratings based on limitation of flexion of the leg. Flexion of the leg limited to 60 degrees is rated at 0 percent disabling, flexion of the leg limited to 45 degrees is rated 10 percent disabling; flexion of the leg limited to 30 degrees is rated 20 percent disabling; and flexion of the leg limited to 15 degrees is rated 30 percent disabling. 38 C.F.R. § 4.71a. See VAOPGCPREC 09-04 (separate ratings may be granted based on limitation of flexion (Diagnostic Code 5260) and limitation of extension (Diagnostic Code 5261) of the same knee joint).

Diagnostic Code 5261 provides ratings based on limitation of extension of the leg. Extension of the leg limited to 5 degrees is rated 0 percent disabling, extension of the leg limited to 10 degrees is rated 10 percent disabling; extension of the leg limited to 15 degrees is rated 20 percent disabling; extension of the leg limited to 20 degrees is rated 30 percent disabling; extension of the leg limited to 30 degrees is rated 40 percent disabling; and extension of the leg limited to 45 degrees is rated 50 percent disabling. 38 C.F.R. § 4.71a.

Diagnostic Code 5262 provides ratings for impairment of the tibia and fibula. A 10 percent rating is warranted for malunion with slight knee or ankle disability. A 20 percent rating is warranted for malunion with moderate knee or ankle disability. A 30 percent rating is warranted for malunion with marked knee or ankle disability. A 40 percent rating is warranted for nonunion with loose motion and requiring a brace. 38 C.F.R. § 4.71a.

When there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102. When all of the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a fair preponderance of the evidence is against the claim, in which case the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

1. Entitlement to a rating in excess of 10 percent for right knee patellofemoral syndrome with degenerative changes

2. Entitlement to a rating in excess of 10 percent for left knee patellofemoral syndrome with degenerative changes

The Veteran and his representative assert that his service-connected bilateral knee disabilities warrant a higher rating, currently his bilateral knees are rated under 38 C.F.R. § 4.71a, Diagnostic Code 5010-5260. As shown more fully below, the Board has determined that his right knee meniscus tear warrants a separate compensable rating and that only symptoms associated with his bilateral knee patellofemoral syndrome with degenerative changes will initially be addressed.

The Veteran was afforded a VA examination in May 2019. The May 2019 examiner diagnosed the Veteran with left knee meniscal tear, left knee arthritis, bilateral patellofemoral pain syndrome, and left knee degenerative arthritis. However, based on the medical history, it appears that the diagnosis of a left knee meniscal tear may be a mistake, instead it is a right knee meniscal tear. The Veteran reported experiencing flare-ups, notably that any bending or squatting of the right knee causes significant pain. The Veteran also reported experiencing functional loss, currently involving the right knee due to repetitive action of bending, or squatting. During the examination, the Veteran exhibited full initial range of motion in the bilateral knees and noted that the right knee showed pain on motion and pain on weight bearing. After repetitive use, the right knee experienced reduced range of motion to 110 degrees. The Veteran’s flare-ups limit the Veteran’s functional ability due to pain, fatigue, and lack of endurance. The examiner noted that the Veteran did not have ankylosis or joint instability, and the Veteran does not have a history of recurrent subluxation or recurrent effusion. There was a meniscal tear, and there were frequent episodes of joint “locking,” pain, and effusion. The examiner noted that the Veteran underwent surgical procedures, notably two arthroscopic partial lateral meniscectomies in the right knee. The examination noted that these two surgical procedures also resulted in scars. The examiner indicated his belief that the Veteran has no functional impact to his current employment status due to the service-connected bilateral knee disabilities. Additionally, the examination noted that there is evidence of pain on passive range of motion testing and pain when the joint is used in nonweight-bearing.

The Veteran currently has a disability rating of 10 percent for each of his knee disabilities under Diagnostic Code 5010-5260 based on functional loss due to painful motion and x-ray evidence of arthritis. The Board finds that the Veteran is not entitled to an increased rating under DeLuca. There is no additional uncompensated compensable limitation of motion that can form the basis of an increased rating and no limitation of motion that the Veteran is not already being compensated for. To compensate the Veteran for the same painful motion under 38 C.F.R. § 4.59 and DeLuca would constitute the prohibited practice of pyramiding. See 38 C.F.R. § 4.14. 

The Board notes that there are additional treatment records in the claims file. However, these treatment records do not demonstrate any compensable limitation of range of motion for the Veteran’s knee disabilities.

Likewise, prohibitions regarding pyramiding preclude compensation for painful motion under Correia v. McDonald, 28 Vet. App. 158, 169-70 (2016). A VA examination of the joints must, wherever possible, include range of motion testing for pain on active motion, passive motion, weight-bearing, nonweight-bearing, and, if possible, with the range of the opposite undamaged joint. Correia, 28 Vet. App. at 169-70; 38 C.F.R. § 4.59. But because the Veteran is already being compensated for his painful noncompensable motion, there is no additional uncompensated limitation of motion that can provide a basis for an increased rating under Correia or on any other basis.

In regard to Diagnostic Code 5260 and 5261, there is no compensable limitation of motion that can form the basis for the assignment of a separate disability rating. Therefore, the Board finds that a separate rating under these Diagnostic Codes is not warranted.

The Veteran is not entitled to a separate compensable evaluation for ankylosis because the record does not show any ankylosis of the bilateral knees. Therefore, Diagnostic Code 5256 is not applicable.

The Veteran is not entitled to a separate compensable evaluation for lateral instability because the record does not show any joint instability of the bilateral knees. Therefore, Diagnostic Code 5257 does not provide a basis for a higher or separate rating.

However, when semilunar cartilage (that is, the meniscus) is dislocated with frequent episodes of locking, pain and effusion into the joint a 20 percent rating is assigned. 38 C.F.R. § 4.71a, Diagnostic Code 5258. In this regard, the Veteran’s May 2019 VA examination has reported frequent episodes of joint “locking,” pain, and effusion in the right knee. 

The May 2019 VA examiner submitted an opinion stating that the Veteran’s meniscus tear was more likely than not due to a work-related injury, and not the Veteran’s service. To support this opinion, the Veteran noted the existence of an MRI from January 2006 of the Veteran’s left knee, while the Veteran was in active duty which did not note the existence of a meniscus tear. 

The Board notes that the MRI of the Veteran’s left knee cannot be used as dispositive evidence for the existence of a meniscus tear for the right knee, and the MRI occurred almost a year before the Veteran exited service.

If the conditions cannot be sufficiently distinguished, entitlement to the benefit sought is determined based on the overlapping symptoms, which are attributed in whole to the service-connected disability. 38 C.F.R. § 3.102; Mittleider v. West, 11 Vet. App. 181 (1998). Therefore, the Board finds that a separate 20 percent rating under Diagnostic Code 5258 for the right knee meniscus tear is warranted as of August 18, 2018. 

When semilunar cartilage has been removed, but remains symptomatic, a 10 percent rating is assigned. 38 C.F.R. § 4.71a, Diagnostic Code 5259. Here, since the Board is assigning the higher rating available for damage to the meniscus, assigning a 10 percent rating for the same symptom under a different diagnostic code would constitute prohibited pyramiding. 

As to Diagnostic Codes 5262 and 5263, there is no probative evidence of any impairments of the Veteran's tibia or fibula nor has the Veteran been shown to have genu recurvatum. Thus, an increased or separate rating under these Diagnostic Codes is not warranted.

Therefore, resolving reasonable doubt in the Veteran's favor, the Board finds that while he is not entitled to an increased rating for his bilateral knee disabilities, he is entitled to a separate 20 percent, but not greater, rating under Diagnostic Code 5258 for his right knee meniscus tear as of August 18, 2018.

Temporary Total Evaluation

A total disability rating (100 percent) will be assigned without regard to other provisions of the rating schedule when it is established that a service-connected disability has required hospital treatment in a VA or an approved hospital for a period in excess of 21 days or hospital observation at VA expense for a service-connected disability for a period in excess of 21 days. 38 C.F.R. § 4.29. This increased rating will be effective the first day of continuous hospitalization and will be terminated effective the last day of the month of hospital discharge (regular discharge or release to non-bed care) or effective the last day of the month of termination of treatment or observation for the service-connected disability. 38 C.F.R. § 4.29(a).

Total temporary ratings can also be assigned based on convalescence following surgical procedures. A total disability rating is assigned when it is established by report or hospital discharge or outpatient release that entitlement is warranted, effective the date of hospital admission and continuing for one, two, or three months from the first day of the month following hospital discharge, due to medical evidence showing that: 1) the veteran underwent surgery necessitating at least one month of convalescence; 2) there are severe postoperative residuals, such as incompletely healed surgical wounds, stumps of recent amputations, therapeutic immobilization of one or more major joints, a body cast, the necessity of home confinement, or the necessity of crutches or a wheel chair; or 3) there is immobilization by cast, though no surgery, of one or more major joints. 38 U.S.C. § 1155; 38 C.F.R. § 4.30.

3. Entitlement to a temporary total rating based on surgical or other treatment necessitating convalescence following right knee surgery

The Veteran is service-connected for right knee meniscus tear from August 18, 2018. In September 2018 and February 2019, the Veteran received arthroscopic partial lateral meniscectomies surgeries in the right knee. 

The Veteran does not explicitly state that he experienced an extended hospital stay or period of convalescence following the September 2018 and February 2019 arthroscopic partial lateral meniscectomies surgeries. However, his surgery rehabilitation records provide details of the period of convalescence following the Veteran’s surgeries. Notably, an October 2018 treatment note state the Veteran would need to use crutches over the next 6 weeks and that the Veteran is temporarily disabled. In November 2018, another treatment note confirmed that the Veteran would begin physical therapy, however he would still be totally disabled over the next 6 weeks. After the February 2019 surgery, a treatment noted that the Veteran would need 6 more weeks of physical therapy.

The Board finds that the Veteran meets the criteria for a temporary total evaluation for his September 2018 and February 2019 right knee surgeries under 38 C.F.R. § 4.30.

Therefore, entitlement to a temporary total rating based on surgical or other treatment necessitating convalescence following knee surgery, from September 20, 2018, to December 20, 2018, and from February 7, 2019, to May 7, 2019, is warranted.

REASONS FOR REMAND

Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU) is remanded.

Regrettably, a remand is necessary for further evidentiary development of the Veteran's appeal.

In May 2019, the Veteran filed a claim for TDIU asserting that his bilateral knee disabilities make him unemployable. The Veteran reportedly became too disabled to work and last worked full-time in August 2018 due to an injury to his service-connected right knee. The Veteran’s employment was in construction and in a warehouse.

The Veteran was afforded a VA examination for his service-connected bilateral knee disabilities in May 2019. 

The Veteran was afforded a VA examination in May 2019. The Veteran reported experiencing flare-ups, notably that any bending or squatting of the right knee causes significant pain. The Veteran also reported experiencing functional loss, currently involving the right knee due to repetitive action of bending, or squatting. The examiner noted his belief that the Veteran has no functional impact to his current employment status due to the service-connected bilateral knee disabilities. 

Given the Veteran’s reported flare-ups and functional loss, the examiner’s opinion is inconsistent with the examiner’s conclusion without providing a rationale to explain the conclusion.

The Board’s assignment of a separate 20 percent rating for the Veteran’s right knee meniscus tear also requires the readjudication of his TDIU claim. 

The matters are REMANDED for the following action:

Schedule the Veteran for an examination with an appropriate examiner to address impact of the Veteran’s service-connected disabilities on his ability to secure of follow a substantially gainful occupation. 

The examiner must provide all findings, along with a complete rationale for his or her opinion(s), in the examination report. If any of the above requested opinions cannot be made without resort to speculation, the examiner must state this and specifically explain whether there is any potentially available information that, if obtained, would allow for a non-speculative opinion to be provided. 

The examiner is advised that the Veteran is considered competent to be able to report symptoms, and that his reports must be considered in formulating the requested opinions. If the Veteran's reports are discounted, the examiner should provide a reason for doing so. 

 

 

Michael J. Skaltsounis

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board A. R. Montalvo, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.